Filed 5/20/19; Certified for publication 6/18/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FELICIANO TANGUILIG,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>STEVE VALDEZ,<br><br>     Defendant and Appellant. | No. A151994<br><br>(San Francisco County Super. Ct. No. CCH-17-579178) |

  In this dispute between neighbors in the city of San Francisco, Steve Valdez, respondent to a petition for a restraining order filed by Feliciano Tanguilig under the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act, Welf. & Inst. Code, § 15600 et seq.), seeks reversal of the superior court's order, issued after a hearing on Tanguilig's petition, restraining Valdez from engaging in abusive conduct toward Tanguilig and Tanguilig's family members, all of whom lived next door to Valdez, and ordering him to stay away from them. Valdez, appearing in propria persona, either contends or questions whether the court made three categories of reversible error at the hearing. These involve the court's consideration of statements by Tanguilig's son-in-law at the hearing; the burden of proof the court applied in reviewing the evidence; and the court's consideration, or lack of consideration, of Valdez's "mens rea." We conclude Valdez's arguments have been forfeited for failure to raise them first below, lack merit and/or are insufficient to affirmatively show error. Therefore, we affirm the order.

1

# BACKGROUND

In April 2017, Tanguilig, then 74 years of age, filed his petition for a restraining order under Welfare and Institutions Code section 15657.03 of the Elder Abuse Act in San Francisco Superior Court. He sought protection from elder abuse allegedly committed against him by Valdez.[1] Tanguilig also sought protection for four members of his family, including his son-in-law Michael Rutledge, all of whom lived in the same house, located on Niagara Avenue in San Francisco (the Tanguilig/Rutledge residence), immediately next to Valdez's house. Under penalty of perjury, Tanguilig recounted a number of incidents that he asserted constituted elder abuse by Valdez against him. We focus on two categories of incidents that are relevant to our resolution of this appeal.

According to Tanguilig's sworn petition statements, he was seeking a protective order against Valdez "for mental anguish, emotional distress and general nuisance behavior causing additional harm and keeping plaintiff, and plaintiff's family from the full enjoyment of their property." Among his contentions was, first, that "[n]early every trash day in 2016 [Valdez] places his trash cans in the driveway of [the Tanguilig/Rutledge residence], blocking the residents of [the Tanguilig/Rutledge residence] from using their driveway. In order to get to medical appointments, and other errands, Tanguilig is forced to move [Valdez's] trash cans, which is a nuisance and also dangerous as Tanguilig has to sometimes go into the street in order to move them. Tanguilig has asked [Valdez] numerous times to stop doing this. [Valdez] has his own driveway, but refuses to place his trash cans there, instead he chooses to annoy, harass and be a nuisance on the residents of [the Tanguilig/Rutledge residence] and block their access to their driveway. <u>This causes Tanguilig mental anguish, and endangers Tanguilig's safety as he is elderly and has to go into [the] street and lift the trash cans out</u>

---

[1] Tanguilig filed a previous petition in December 2016 for a restraining order against Valdez under the Elder Abuse Act. According to Valdez, this petition was dismissed without prejudice in March 2017 because of problems with its service. Because Valdez's appeal is from the court's rulings regarding Tanguilig's April 2017 petition, we do not discuss the December 2016 petition further, other than to discuss contentions about a photograph attached to that previous petition.

of the way constantly."  Second, Tanguilig wrote, Valdez "has assaulted Tanguilig by spraying him with his garden [hose] (through the fence separating the properties) on numerous occasions.  This is assault on an elder."

The court issued a temporary restraining order.  It concluded Tanguilig had provided insufficient facts to support an order restraining Valdez from contact with anyone other than Tanguilig (besides other family members, Tanguilig asserted that Valdez was also harassing workers on his property).  The court issued a temporary restraining order prohibiting Valdez from engaging in conduct that was abusive to Tanguilig and from having any contact with Tanguilig, and ordered Valdez to stay five yards away from Tanguilig and his home.

Valdez filed a written response to Tanguilig's petition, which likewise included statements under penalty of perjury.  He denied Tanguilig's allegations about the trash cans and contended that photographs Tanguilig attached to his petition and previous petition showed trash cans placed in certain positions by others, including employees of the trash collection company, not by himself as Tanguilig alleged.  He stated that he had "never directed a spray from a 'garden [hose]' thru the fence at the petitioner," and that "[t]he backyard fence as viewed from my side measures 10 feet above my grade and has two rows of solid panels on both sides forming a solid barrier with zero openness."

The superior court held a hearing on Tanguilig's petition.  Tanguilig, his son-in-law, Michael Rutledge,[2] and Valdez appeared at the hearing.  The court, without swearing anyone in as a witness, heard from each about what had occurred between them. Tanguilig told the court that Valdez blocked his driveway with his trash cans "on a regular basis," once a week on trash collection day.  Valdez's claim that someone else put the cans in Tanguilig's driveway was "a lie," and Tanguilig sometimes saw Valdez put the cans there from where he lived in the downstairs part of the house at the Tanguilig/Rutledge residence.  Once, Tanguilig asked Valdez to please move the cans because they were directly behind Tanguilig's car, but Valdez would not move them;

---

[2]  Rutledge's name is misspelled in the reporter's transcript of the hearing as "Rutlage."

3

Tanguilig backed his car into a trash can and Valdez said, " 'Thank you.' " Rutledge told the court that after the filing of Tanguilig's first petition, Valdez started putting his trash cans in his own driveway and the cans were no longer blocking the driveway at the Tanguilig/Rutledge residence. He contended this showed it was not the trash collection company that had been blocking the driveway.

Tanguilig also told the court that Valdez had sprayed him with a garden hose "[s]everal times." Tanguilig said, "I'm outside my yard doing some yard work. He turn on his garden hose and tried to direct his water hose towards my fence, and I'm right behind the fence, and he knew I'm right behind the fence because I'm making some noises there. [¶] And the water came over towards me, and the fence was kind of taller than me so I yell at him 'Stop' and 'I'm here.' " Tanguilig continued, "He stop a little bit, and then—and he came back again. The water came back again. And I yell and try to hit the fence with the broom. That's how I stop." Police arrived a few minutes later. Tanguilig believed Valdez had called them, but Valdez would not answer his door when the police knocked on it. Tanguilig and Rutledge then recounted other incidents involving Valdez consistent with allegations in Tanguilig's petition.

Valdez told the court he never put any trash cans behind Tanguilig's car, either someone from the trash collection company, another neighbor or someone taking a parking space did it, and there was no conversation about the trash cans. He denied spraying Tanguilig with a garden hose to try and harm him, saying the fence between the properties was ten feet high and there was "absolutely no way to tell if there's someone there." Rutledge told the court Valdez had "a patio that's way above the fence," that Valdez "knows when I'm there," and that "[h]e's always coming. He tends to come out when we're there." Valdez conceded that he had back stairs that were four or five feet high, but asserted that "even if you're standing on top of the stairs, . . . if there's someone standing on the other side of the fence for about eight or ten feet, you cannot see the person at all." He also suggested there might have been spray from the wind when he was using "a pressure washer or whatever."

4

Rutledge and Valdez then told the court about other incidents, some between the two of them directly. Some of these incidents were mentioned in Tanguilig's petition and others were not. Eventually, the court stopped this discussion, saying, "A lot of what I've heard is disputes among neighbors over building and property rights. [¶] But this is an elder abuse petition; so the only thing I've heard that Mr. Tanguilig has endured is the trash cans." Rutledge replied, "And the water," to which the court responded, "And the water." Tanguilig then added that Valdez had "stalked" him by coming up behind him and saying such things as, "Hey old man? How come you're not talking to me?" Also, after Tanguilig indicated he wanted to say something about the trash cans, he conferred with Rutledge off the record. Rutledge then told the court that Valdez had his own double driveway and so there was no need for him to place his trash cans anywhere near the Tanguilig/Rutledge residence. Rutledge also briefly addressed other factual contentions he and/or Tanguilig had made.

At the conclusion of the hearing, the court found that Tanguilig had met his burden of proof, which the court stated was "reasonable proof by a preponderance of the evidence," and had proven elder abuse. It issued a "no harassment" order against Valdez for a period of three years, thereby prohibiting him from engaging in any abusive conduct against Tanguilig and the family members named in Tanguilig's petition, including Rutledge. The court did not order a "no contact" order because it thought the parties would need to talk at times as neighbors. It ordered Valdez to stay at least five yards away from Tanguilig and the other family members unless Valdez was using the alleyway between the houses, and to stay at least 30 inches away if he was on his own premises.

Valdez filed a timely notice of appeal from the court's order. His opening brief is the only brief filed in this appeal.

**DISCUSSION**

Valdez makes three claims of reversible error. Before reviewing them, we note that as a party appearing in propria persona, Valdez "is entitled to the same, but no greater, consideration than other litigants and attorneys." (*Nelson v. Gaunt* (1981)

5

125 Cal.App.3d 623, 638, followed in *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1444.) Accordingly, we may disregard factual contentions that are not supported by citations to the record (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379) or are based on information that is outside the record (*In re Stone* (1982) 130 Cal.App.3d 922, 930, fn. 9 [transcript not in evidence before the trial court was outside the scope of the appellate court's review]).[3] We may disregard legal arguments that are not supported by citations to legal authority (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [an unsupported legal point may be treated as waived]) or are conclusory (*Strutt v. Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, 873-874 ["[a]n appellate court is not required to consider alleged errors where the appellant merely complains of them without pertinent argument"].) Also, we will bear in mind that an " 'order of the lower court is *presumed correct*.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Therefore, Valdez has the burden of affirmatively showing any error. (*Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1189.)

**I.**

***Valdez "Joinder" Claim Is Largely Forfeited and Lacks Merit.***

Valdez first argues the superior court allowed Tanguilig's son-in-law, Michael Rutledge, to "join" his own claims with Tanguilig's, which led to a "grossly unfair" result and denied Valdez "substantial rights" of due process, equal protection and the right to a fair trial. Valdez has forfeited a large part of this claim, and it also lacks merit.

**A. The Proceedings Below**

At the hearing on Tanguilig's petition, Rutledge appeared with Tanguilig and periodically addressed the court. He spoke regarding Tanguilig's allegations and added his own account of Valdez's mistreatment of him directly. Neither Rutledge not Tanguilig said anything to the court about the nature of Rutledge's appearance. They indicated he was Tanguilig's son-in-law; resided with his own family, including

---

[3] As we further discuss in footnote 5 *post*, we consider the statements by Valdez, Rutledge and Tanguilig to the court at the hearing on Tanguilig's petition as a part of the evidentiary record, even though they do not appear to have been made under oath.

6

Tanguilig's daughter, next door to Valdez in the upstairs part of a house they shared with Tanguilig and Tanguilig's spouse, who lived downstairs, and that "technically" Rutledge and his wife owned the property. Valdez did not object to any part of Rutledge's participation in the hearing.

The court, after hearing Tanguilig's and Rutledge's accounts, indicated it was focusing on two of Tanguilig's Elder Abuse Act claims, which were that Valdez had deliberately blocked Tanguilig's driveway with trash cans and had sprayed water at Tanguilig from a hose through a fence that separated the two properties.

### B. Analysis

Valdez argues the court erred in allowing Rutledge to "join" his claims with Tanguilig's claims at the hearing for several reasons, none of which are persuasive. First, Valdez claims, Rutledge lacked standing to petition the court for a restraining order for himself under the Elder Abuse Act because of his age.[4] This argument is based on the false premise that Rutledge petitioned for himself. He did not. Furthermore, under the Elder Abuse Act, Tanguilig could seek a restraining order to protect not only himself, but also named members of his family, which additional protection may be ordered "in the discretion of the court, on a showing of good cause." (Welf. & Inst. Code, § 15657.03, subdivision (b)(4)(A).) Tanguilig requested this additional protection in his petition. Given his request, that his petition allegations concerned Valdez's abusive conduct towards him at a house he shared with the family members he named, including Rutledge, and that he identified Rutledge in his petition as present when Valdez abused him, we see no reason why Rutledge could not appear at the hearing as a witness, albeit unsworn,[5] on Tanguilig's behalf. This includes appearing to give his accounts of

---

[4] Under the Elder Abuse Act, an " '[e]lder' means any person residing in this state, 65 years of age or older." (Welf. & Inst. Code, § 15610.27.) Rutledge was 37 years old at the time of the hearing.

[5] Tanguilig, Rutledge and Valdez were not sworn in as witnesses at the hearing, but the court heard their accounts without objection. As this court has previously indicated, we consider unsworn testimony in determining whether substantial evidence supports a lower court's order. (*City of Fontana v. California Dept. of Tax & Fee*

Valdez's mistreatment of him directly, which at least arguably showed abusive behavior by Valdez toward someone else who, like Tanguilig, lived in the residence next door to Valdez, thereby suggesting the need for additional protection for all the family members living at the Tanguilig/Rutledge residence. Case law indicates the appearance of third-party witnesses in these hearings is commonplace. (See, e.g., *Herriot v. Herriot* (2019) 33 Cal.App.5th 212, 219–221 [at a hearing on competing Elder Claim Act petitions for restraining orders by a man and woman formerly married to each other who lived in the same building, the court heard testimony from their daughter, a brother of the ex-husband, and two employees of the ex-husband].)

Second, Valdez argues that, although Rutledge could appear at the hearing as Tanguilig's "support person" under a provision of the Elder Abuse Act (Welf. & Inst. Code, § 15657.03, subdivision (j)), he nonetheless "unduly influenced" Tanguilig in violation of that provision.[6] Assuming for the sake of argument that we should construe

---

*Administration* (2017) 17 Cal.App.5th 899, 920–921, citing approvingly, 3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 37, p. 85 [" 'No constitutional provision is violated if unsworn testimony is received, and thus a party waives its objection to unsworn testimony by failing to object to it at trial' "]; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 369, p. 427 [" 'Incompetent or otherwise inadmissible evidence admitted without objection will sustain the judgment' "].) In any event, Taguilig made the same factual contentions about Valdez's abuse of him in his petition, doing so under penalty of perjury under the laws of California. He thereby submitted what was in effect a sworn declaration for the court's consideration, which is permitted under Welfare and Institutions Code section 15657.03, subdivision (c).

[6] Section 15657.03, subdivision (j) provides that in an Elder Abuse Act restraining order proceeding, "a support person may accompany a party in court and, if the party is not represented by an attorney, may sit with the party at the table that is generally reserved for the party and the party's attorney. The support person is present to provide moral and emotional support for a person who alleges he or she is a victim of abuse. The support person is not present as a legal adviser and may not provide legal advice. The support person may assist the person who alleges he or she is a victim of abuse in feeling more confident that he or she will not be injured or threatened by the other party during the proceedings if the person who alleges he or she is a victim of abuse and the other party are required to be present in close proximity. This subdivision does not preclude the court from exercising its discretion to remove the support person from

8

Rutledge's appearance at the hearing as that of a support person, Valdez has forfeited this claim by failing to first raise it below. (See *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 784 [generally, "[p]rocedural irregularities or erroneous rulings in connection with the relief sought or defenses asserted will not be considered on appeal where a timely objection could have been made but was not made in the court below"], disapproved in part on other grounds in *Kim v. Toyota Motor Corp.* (2018) 6 Cal.5th 21, 38, fn. 6; see also *In re Joseph H.* (2015) 237 Cal.App.4th 517, 536-537 [minor forfeited claim that allowing certain testimony was "procedurally improper" for failure to object on that ground below].)

Third, Valdez argues the superior court erred by allowing Rutledge to pursue allegations of his own mistreatment by Valdez without notice to Valdez and, further, failing to recognize that Rutledge, ineligible for Elder Abuse Act protection, had to prove any alleged mistreatment by the clear and convincing evidence standard that is applied to civil harassment restraining order petitions rather than by the preponderance of the evidence standard that is specially applied to Elder Abuse Act petitions. (See *People v. Stone* (2004) 123 Cal.App.4th 153, 160, fn. 12 [proof of civil harassment by clear and convincing evidence required before a restraining order may issue under Code of Civil Procedure section 527.6], superseded by statute on other grounds as stated in *Babalola v. Superior Court* (2011) 192 Cal.App.4th 948, 951; *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1138-1139 [preponderance of the evidence standard applied to Elder Abuse Act restraining order petitions].)[7]

Valdez's arguments are unpersuasive for multiple reasons. To the extent Valdez is arguing the court erred by allowing Rutledge to talk about his own experiences with Valdez, Valdez has forfeited this claim by his failure to first raise it below. (See *People*

the courtroom if the court believes the support person is prompting, swaying, or influencing the party assisted by the support person."

[7] Valdez also counters the substance of Rutledge's allegations by asserting, as he did below, what he characterizes as the "affirmative defense" that Rutledge engaged in "abuse of process" against him.

*v. Abel* (2012) 53 Cal.4th 891, 924 ["[a] defendant who fails to make a timely objection or motion to strike evidence may not later claim that admission of the evidence was error"].)  Second, as we have already discussed, we see no reason why Valdez could not give his accounts as a witness on Tanguilig's behalf.  Third, assuming for the sake of argument that the court erred, Valdez cannot demonstrate prejudicial error in light of the court's statement during the hearing that it was focusing on Tanguilig's Elder Abuse Act contentions, which did not include the additional allegations that Rutledge made about his own mistreatment at Valdez's hands.  As we will discuss further in subpart III *post*, the evidence of abuse in the case, i.e., Tanguilig's accounts of Valdez deliberately using trash cans to block the driveway of a house Tanguilig shared with Rutledge and other family members and his deliberately spraying water through a fence at Tanguilig when Tanguilig was standing outside the house, it was reasonable for the court to extend the protections of the restraining order to Tanguilig's named family members, including Rutledge.  (See *Bookout v. Nielsen*, *supra*, 155 Cal.App.4th at p. 1137 [a court's issuance of an Elder Abuse Act protective order is reviewed for abuse of discretion and its factual findings are reviewed for substantial evidence].)

In short, Valdez has forfeited most of his "joinder" claim, and it lacks merit.

## II.

### *Valdez Does Not Establish That the Court Applied the Wrong Burden of Proof.*

Valdez next questions whether the trial court applied the correct burden of proof in evaluating Tanguilig's petition, which question we review de novo.  (See, e.g., *Fountain Valley Regional Hospital & Medical Center. v. Bontá* (1999) 75 Cal.App.4th 316, 323 [burden of proof issue turns on matters of law and, therefore, is reviewed de novo].)  We conclude Valdez has not met his burden as appellant of affirmatively showing the court erred.

At the conclusion of the hearing on Tanguilig's petition, the court stated:  "This is an elder abuse case, and the standard of proof is lower than a typical civil harassment.  It's reasonable proof by a preponderance of the evidence.  And the Court is satisfied the Petitioner has shown that."  Valdez questions whether this is a correct statement of the

10

burden of proof the court was required to apply. He first notes that the statute governing Elder Abuse Act restraining order proceedings, Welfare and Institutions Code section 15657.03 provides, "An order may be issued under this section, with or without notice, to restrain any person for the purpose of preventing a recurrence of abuse, *if a declaration shows, to the satisfaction of the court, reasonable proof* of a past act or acts of abuse of the petitioning elder or dependent adult." (Welf. & Inst. Code, § 15657.03, subd. (c), italics added.) He next points out that a party seeking a further relief at an Elder Abuse Act hearing on a restraining order petition must establish past abuse *by a preponderance of the evidence*. (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.) He then states, "This begs the question, did the court issue the order on the basis of a satisfactory declaratory showing by reasonable proof, or did the court actually base its order upon its sufficient finding of a preponderance of the evidence at hearing?" He does not discuss the differences between these two burden of proof standards, which standard the court applied, or which one the court should have applied.

Valdez's sparse legal citations and his questioning of the court's statement of the burden of proof at the hearing, in which it referred to a duty to find "reasonable proof" under the "preponderance of the evidence" standard, does not meet his duty as appellant to affirmatively show the court erred. This is reason enough to reject his claim. (*Strutt v. Ontario Sav. & Loan Assn.*, *supra*, 28 Cal.App.3d at p. 873; *Lennane v. Franchise Tax Bd.*, *supra*, 51 Cal.App.4th at p. 1189.)

Furthermore, the evidence here is such that, if we assume for the sake of argument that the court applied the wrong burden of proof, its error was harmless. (See *Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1213-1214 [court's instructional error on burden of proof only grounds for reversal if appellant demonstrates " 'the error was prejudicial [citation] and resulted in a "miscarriage of justice" ' "].) As we will discuss in the next subpart, the court's ruling was well supported by Tanguilig's account of Valdez's abuse. That account, which the court plainly found credible because it issued a further restraining order, was sufficient evidence of elder abuse under any standard of proof. (See *Darab Cody N. v. Olivera* (2019) 31 Cal.App.5th 1134, 1141 [" ' "Credibility is an

11

issue for the fact finder . . . we do not reweigh the evidence or reassess the credibility of witnesses" ' "].)

## III.

### *Valdez's "Mens Rea" Argument Lacks Merit*

Finally, Valdez questions whether there was substantial evidence that he had the "mens rea" necessary to support the court's three-year restraining order. This claim also lacks merit.

"Abuse of an elder" means, among other things, "[p]hysical abuse, neglect . . . or other treatment with resulting physical harm or pain or mental suffering." (Welf. & Inst. Code, § 15610.07, subd. (a)(1).) " 'Mental suffering' means fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats [or] harassment . . . ." (Welf. & Inst. Code, § 15610.53.)

In his petition, Tanguilig stated under penalty of perjury that Valdez engaged in numerous actions that, among other things, caused "mental anguish" and "emotional distress." These actions included Valdez's placing his trash cans in the driveway of the Tanguilig/Rutledge residence nearly every trash collection day despite Tanguilig asking him not to do so. Tanguilig further stated Valdez's action caused him "mental anguish, and endanger[ed] [his] safety as he is elderly and has to go into [the] street and lift the trash cans out of the way constantly." Also, Tanguilig stated, Valdez "assaulted Tanguilig by spraying him with his garden [hose] (through the fence separating the properties) on numerous occasions," which Tanguilig characterized as "assault on an elder." As we have discussed, at the hearing on his petition, Tanguilig told the court more about these actions by Valdez and why he thought, based on his interactions with Valdez, that Valdez acted deliberately.

Valdez again makes sparse references to law and evidence. Specifically, he notes, based on Penal Code section 240 and related case law, that criminal assault must be based upon a willful act; recites the definition for "mental suffering" that we have quoted above; and cites the Elder Abuse Act's prohibition in Welfare and Institutions Code

12

section 15657.03, subd. (x) of the use of its restraining order statute for actions covered by the civil harassment restraining order statute, Code of Civil Procedure section 527.6, which requires that a person suffer "harassment" in order to obtain a restraining order. He then asks, "Can an [Elder Abuse Act] Restraining Order issue for just 'harassment' or is a *mens rea* of a specific mental state required?"

Valdez then offers something of an answer to his question. He asserts, based on terms in Welfare and Institutions Code section 15657.03 itself, that " 'abuse of an elder' " cannot be founded on just any act that causes suffering," and requires "something more than 'annoyance', 'harassment', 'nuisance' or being 'bothered,' " some (but not all) of the terms Tanguilig used in his petition. Alluding to aspects of the substantial evidence standard of review, he then lays out a portion of Tanguilig's account at the hearing of Valdez's mistreatment of him, and states, "This brief writer can . . . let the court make up its own determination whether this is substantial."

Valdez's presentation is again unpersuasive. Focusing on Tanguilig's characterization of one part of his conduct as "assault," Valdez makes a convoluted presentation of law that confuses the requirements of criminal assault and the requirements of the Elder Abuse Act. The former is not relevant here because Tanguilig was only required to prove "elder abuse," not criminal assault, regardless of his own characterization of that abuse. Elder abuse is defined as, among other things, any "treatment with resulting . . . mental suffering," which may include "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats [or] harassment . . . ." (Welf. & Inst. Code, §§ 15610.07, subd. (a)(1), 15610.53; see *Darrin v. Miller* (2019) 32 Cal.App.5th 450, 454 [this court noting that "[t]he Elder Abuse Act defines 'abuse' broadly"].) Valdez does not attempt to explain why the evidence presented at the hearing is insufficient to meet this statutory definition, instead leaving it for us to decide. Again, an " 'order of the lower court is *presumed correct*' " (*Denham v. Superior Court*, *supra,* 2 Cal.3d at p. 564), and Valdez has the burden of affirmatively showing error (*Lennane v.*

13

*Franchise Tax Bd.*, *supra*, 51 Cal.App.4th at p. 1189.) He has not done so, which is fatal to his "mens rea" argument.

In any event, the court's order granting a three-year restraining order is supported by substantial evidence. Valdez cites only some of Tanguilig's petition statements about the impact of Valdez's actions on him. Valdez ignores Tanguilig's sworn statement that Valdez's actions caused him "mental anguish" and "emotional distress," that the court obviously found Tanguilig's factual contentions to be credible given its decision to issue a further restraining order, and that these contentions were proof that Valdez engaged in "treatment" of Tanguilig that caused Tanguilig "mental suffering," and thereby qualified as "abuse of an elder" under Welfare and Institutions Code section 15610.07, subdivision (a)(1). Tanguilig stated at the hearing that, based on his own interactions with Valdez, such as Valdez's continuing to block Tanguilig's driveway after being asked not to and continuing to spray water after Tanguilig said to stop, that Valdez's actions were deliberate. To the extent Tanguilig had to show *any* intent on Valdez's part—an issue we need not decide here in light of Valdez's deficient briefing of the issue—Tanguilig's account was substantial evidence that Valdez intended to cause him mental suffering. (See, e.g., *People v. Thomas* (2011) 52 Cal.4th 336, 355 ["Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially"].)

Furthermore, Valdez fails to show the evidence of his abuse of Tanguilig was not sufficient for the court to also provide protection for Tanguilig's family members in its restraining order. We see no reason why the court did not act within its discretion and for "good cause" under Welfare and Institutions Code section 15657.03, subdivision (b)(4)(A) to extend protection to the family members Tanguilig named in his petition. Valdez does not assert a definition of "good cause" that has been applied to Elder Abuse Act restraining order proceedings, and we have not found one. Generally, "good cause as a standard 'is relative and depends on all the circumstances.' " (*Estate of Kerkorian* (2018) 19 Cal.App.5th 709, 721.) " '[I]n determining the meaning of "good cause" in a particular context, the courts utilize common sense based upon the totality of

14

the circumstances,' which 'include[s] the purpose of the underlying statutory scheme.' " (*Ibid.*)  " 'As a general rule, . . . "good cause" includes reasons that are fair, honest, in good faith, not trivial, arbitrary, capricious, or pretextual, and reasonably related to legitimate needs, goals, and purposes.' " (*Ibid.*)  "The concept of good cause should not be enshrined in legal formalism; it calls for a factual exposition of a reasonable ground for the sought order." (*Waters v. Superior Court* (1962) 58 Cal.2d 885, 893.)  Here, Tanguilig's account indicates Valdez's repeated abuse of him occurred outside the house at the Tanguilig/Rutledge residence that Tanguilig shared with the other family members he named in the petition.  The nature of this abuse, i.e., Valdez's deliberate blocking of the driveway of the Tanguilig/Rutledge residence and deliberate spraying of water through a fence when Tanguilig was standing outside on the property, was such that a court could reasonably and for good cause extend the protection ordered to the other family members living at the Tanguilig/Rutledge residence.

**DISPOSITION**

The order appealed from is affirmed.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

*Tanguilig v. Valdez* (A151994)

16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| FELICIANO TANGUILIG, | No. A151994 |
| Plaintiff and Respondent, | |
| v. | (San Francisco County Super. Ct. No. CCH-17-579178) |
| STEVE VALDEZ, | |
| Defendant and Appellant. | **ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT**:

The opinion in the above-entitled matter filed on May 20, 2019, was not certified for publication in the Official Reports. For good cause, the request for publication is granted.

Pursuant to California Rules of Court, rules 8.1120 and 8.1105(b), the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

Dated: _____          _____

Kline, P.J.

1

Trial Court:   San Francisco County Superior Court

Trial Judge:   Hon. Stephen Murphy

Counsel:

Steve Valdez, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.