Filed 8/27/21  R.P. v. Quinn CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| R.P.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY QUINN,<br><br>        Defendant and Appellant. | A161584<br><br>(Marin County Super. Ct.<br>No. FL2002520) |

Timothy Quinn appeals from a restraining order issued against him under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (Elder Abuse Act).[1]  Quinn contends there is insufficient evidence to support the court's finding of elder abuse.  We affirm, and conclude that R.P. is entitled to costs and attorney fees incurred on appeal, the amounts of which shall be determined by the trial court.

### BACKGROUND

In October 2020, 84-year-old R.P. filed a petition for a restraining order against Quinn, his neighbor, under section 15657.03 of the Elder Abuse Act. The petition alleged Quinn had "recently threatened" R.P. and his 16-year-old

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

grandson by saying, " 'I have a gun.' "  The petition sought protection for R.P. as well as other family members, including R.P.'s wife and grandson.

At the hearing, R.P. testified that he and Quinn share a common driveway that serves as the access point to four neighboring homes.  On February 14, 2020, R.P. pulled into the driveway with his grandson and dog. He noticed Quinn standing at the end of the driveway with a cat.  As R.P. was getting out of his truck, his dog started to run towards Quinn and the cat; the cat then ran away.  R.P. called the dog off and gathered him, at which point Quinn had already walked up onto his own property.  When Quinn "hollered down" the first time, R.P. did not hear what Quinn said. After R.P.'s grandson said, " 'I have a phone and I can call the sheriff,' " R.P. heard Quinn say, " 'I have a gun.' "  R.P. then gathered his grandson and dog, and they went to his house so the situation would not "escalate" further. According to R.P., Quinn posed "a credible threat of violence," and R.P. feared for his own safety.  R.P.'s wife testified that, based on Quinn's statement regarding the gun and other comments he had made for over 20 years, she was "afraid of this man and what he might do."

R.P.'s grandson testified that, after the dog chased the cat and as Quinn was walking up towards his house, Quinn said, " 'I have a gun.' " R.P.'s grandson asked Quinn what he had said, and Quinn repeated, louder, " 'I have a gun.' "  R.P.'s grandson then responded, " 'I, personally, I've got a lot of things.  One thing in particular is my phone, and my phone is great at calling 911.' "  R.P.'s grandson testified that he was afraid Quinn was going to "maybe harm" him, R.P., or the dog.

Quinn testified that he screamed at the dog as it was chasing his cat up the hill towards his house, but the dog then returned to the truck.  He did not "directly" have an interchange with R.P.'s grandson.  Instead, Quinn "yelled,

2

'I have a gun' out of frustration to everyone who was down below." He did not intend it to be a threat and regretted the statement.

The parties also presented evidence regarding other incidents between the neighbors. For example, the court admitted into evidence surveillance video footage of an August 11, 2020 incident involving Quinn and R.P.'s gardeners, which R.P. described as an "explosive tirade" by Quinn. Quinn testified that he asked one of the gardeners about the scope of the work and property line, and as a result they both "became agitated."

R.P. also testified that, on approximately six occasions prior to the February 14, 2020 incident, he saw Quinn carrying around a baseball bat in the driveway in a "threatening manner." A mutual neighbor testified she had previously seen Quinn carry a bat around the properties and found the behavior threatening. She also testified that Quinn would watch her house with binoculars and throw dog feces onto the common driveway. R.P.'s daughter testified that when she drove from R.P.'s house, Quinn would stand at the foot of the driveway, shake his head, and "wave [her] off." Quinn testified that he had carried a bat on some occasions to protect himself and his cats from dogs and other animals.

The court issued a three-year restraining order protecting R.P., his wife, and his grandson. It found that Quinn's statement regarding the gun was a "direct, spot-on threat" directed at both R.P. and his grandson. The court also found Quinn's moving of the dog feces was "petty" and "unnecessary," his "almost stalker activity" of R.P.'s daughter was "menacing" and "not normal," and his carrying of the bat was "explainable" but "could have been seen as menacing conduct" given the relationship between the parties. The court determined that Quinn's statement about possessing a firearm, along with the "cumulative effect" of all the evidence,

3

supported the issuance of the restraining order. It concluded that Quinn's conduct had resulted in "mental suffering of [R.P.]."

## DISCUSSION

### A.

The Elder Abuse Act broadly defines " '[a]buse of an elder or a dependent adult' " as including not only physical abuse, neglect, abandonment, isolation or abduction, but also "other treatment with resulting physical harm or pain or mental suffering." (§ 15610.07, subd. (a)(1); *Darrin v. Miller* (2019) 32 Cal.App.5th 450, 454.) " 'Mental suffering' " is defined to include "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts." (§ 15610.53.) A restraining order may be issued under the Elder Abuse Act based on a single past act of abuse proved by a preponderance of evidence. (§ 15657.03, subd. (c); *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137.)

We review the issuance of an Elder Abuse Act restraining order for abuse of discretion, and the factual findings underpinning such an order for substantial evidence. (*Bookout v. Nielsen*, *supra*, 155 Cal.App.4th at p. 1137.) "We resolve all conflicts in the evidence in favor of . . . the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings." (*Id.* at pp. 1137–1138.) "[W]e will only find an abuse of discretion when the trial court exceeds the bounds of reason or disregards the uncontradicted evidence." (*Id.* at p. 1140.) "The party challenging the issuance of the order bears the burden of showing an abuse of discretion by the trial court." (*Ibid.*)

4

B.

Quinn argues that the court exceeded the bounds of reason here because his statement about having a gun was not directed at R.P., and thus there was insufficient evidence to support the court's finding of abuse. We are not persuaded. Quinn's argument is belied by his own testimony acknowledging that, while he did not "directly" have an exchange with R.P.'s grandson, he "yelled, 'I have a gun' out of frustration to *everyone* who was down below." (Italics added.) That included R.P. and his grandson. Moreover, there is ample evidence that R.P. and his grandson interpreted Quinn's statement as a threat to them both. R.P. testified that, after hearing the statement, he moved himself, his grandson, and the dog to his house so the situation would not "escalate" any further. Quinn made R.P. fear for his own safety. R.P.'s grandson also testified that he was afraid that Quinn might harm him, R.P., or the dog. Based on this evidence, it was reasonable for the court to determine that Quinn's statement constituted abuse under the Elder Abuse Act, that is, a threat to R.P. that resulted in his "mental suffering." (§§ 15610.07, subd. (a)(1); 15610.53.) We conclude substantial evidence supports the trial court's findings.

C.

Quinn makes several other challenges to the trial court's ruling, none of which we find persuasive. First, Quinn cites the evidence of his other conduct to suggest that the court "appeared to issue its ruling based on a feeling that Mr. Quinn was the bad apple in the neighborhood." We disagree. The court relied primarily on the evidence regarding Quinn's statement that he possessed a firearm to justify its issuance of a restraining order and, as described above, that evidence was itself sufficient to support a finding of abuse under the Elder Abuse Act. Second, Quinn argues that his reference to

5

having a gun is insufficient because it does not qualify as a threat under Penal Code section 422. The requirements to prove a criminal threat under Penal Code section 422 are not relevant here. (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 526 ["Valdez makes a convoluted presentation of law that confuses the requirements of criminal assault and the requirements of the Elder Abuse Act"].) R.P. was only required to prove abuse as defined under the Elder Abuse Act, which includes "mental suffering" brought about by "forms of intimidating behavior [and] threats." (§§ 15610.07, subd. (a)(1); 15610.53.) Third, Quinn incorrectly argues that the court "never indicated that it made a finding that Mr. Quinn had caused [R.P.] physical harm, or pain or mental suffering within the meaning of the statute." To the contrary, the court expressly concluded that Quinn's treatment of R.P. resulted in his "mental suffering" and justified issuance of the restraining order.

In sum, we conclude that Quinn failed to satisfy his burden to show that the court abused its discretion.

D.

While R.P. represented himself in the trial court proceedings, R.P. now requests an award of his attorney fees incurred in this appeal. Section 15657.03, subdivision (t) provides that a "prevailing party in an action brought under this section may be awarded court costs and attorney's fees, if any." As the prevailing party in both the underlying matter and on appeal, we conclude that R.P. is entitled to reasonable attorney fees incurred on appeal, the amount of which is to be determined by the trial court. (See Cal. Rules of Court, rule 3.1702(c) [describing procedure for applying for attorney fees incurred on appeal].)

6

## DISPOSITION

The trial court's restraining order after hearing is affirmed.  R.P. is entitled to recover his costs on appeal (Cal. Rules of Court, rule 8.278(a)(2)), and to an award of attorney fees incurred on appeal, the amounts of which shall be determined by the trial court.

_____

Rodriguez, J.*

WE CONCUR:


_____

Simons, Acting P. J.


_____

Burns, J.

A161584

_____

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8