Filed 1/15/26  Park v. Razina CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TA YEON PARK | B345894 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 25TRRO00155) |
| v. | |
| ELENA RAZINA, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, James E. Horan, Judge.  Affirmed.

Ta Yeon Park, in pro. per., for Plaintiff and Appellant.

Elena Razina, in pro. per., for Defendant and Respondent.

# INTRODUCTION

Ta Yeon Park appeals from the trial court's order denying her request for an elder abuse protective order under Welfare and Institutions Code section 15657.03.[1]  Park contends the court erred by (1) applying an incorrect legal standard, (2) improperly discounting her evidence of mental suffering, (3) failing to consider all the evidence, and (4) using faulty reasoning, refusing to consider all the evidence (as she argues in her third contention), and precluding her son from testifying.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Park Files a Request for an Elder Abuse Protective Order, and the Trial Court Issues a Temporary Restraining Order*

On March 4, 2025 Park filed a "Request for Elder or Dependent Adult Abuse Restraining Orders" under section 15657.03.  Park sought protection from Elena Razina, Park's former daughter-in-law, and asked the trial court to enjoin Razina from, among other things, contacting or physically abusing her.  Park stated in her attached declaration she was 78 years old, suffered from rheumatoid arthritis, and spoke only Korean.

Park alleged six incidents of abuse.  First, in 2019, during Park's visit to Russia, Razina struck Park's cheek with her palm and kicked her leg.  Park stated her son and grandson were in

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

the home during the incident, which she did not report because she does not speak Russian.  The 2019 incident, Park claimed, caused her "pain and distress."  Second, in January 2023, during "a four-minute outburst," Razina "jabbed" her finger near Park's eye "while shouting profanities."  Park alleged that her son, grandson, and Razina's daughter were present during this incident, which Park said caused her "intense fear and distress."  Third, also in January 2023, Razina "chased" Park with her phone, "filming" Park's face as Park "retreated," and "mocked" Park in Russian, which Park's son translated for her.  Park alleged the "public humiliation" in front of her grandson and Razina's daughter caused her "significant distress."  Fourth, and again in January 2023, Razina and her daughter "openly mocked" Park's "physical disability" by imitating the way Park walked, which Park claimed caused her "significant emotional distress."  Fifth, in February 2023, while Park was washing vegetables, Razina poured dish soap on the vegetables, "apparently trying to stage an incident and provoke a confrontation."  And sixth, Razina "continued to send" Park's son "numerous false messages" claiming Park had dementia and psychosis.  According to Park, the "false dementia label" has "relentlessly undermined" her self-esteem and "eroded" her trust in relationships.

The trial court issued a temporary restraining order.

B.     *The Trial Court Denies Park's Request for a Protective Order*

At the hearing on Park's request for a protective order a Korean language interpreter assisted Park, and a Russian language interpreter assisted Razina.  The trial court stated at the outset of the hearing that the court did not "have jurisdiction"

over the incident in Russia, but that the incident would provide "context." After observing the parties had several video recordings of the various incidents, the court asked counsel for Park to summarize "the biggest issue" that would justify a restraining order. The court clarified that Park could also describe the incident, but emphasized that counsel should pick the "biggest incident." The court explained: "We're gonna litigate this one incident at a time, and then we will look at the totality." The trial court indicated that, for each incident, the court would hear each side's account and then compare those accounts to what the videos showed.

Counsel for Park described an incident that occurred in January 2023 where, after Park asked Razina to clean the house, Razina jabbed her finger "near" Park's face while swearing at her. The trial court confirmed with Park that Razina did not touch her and asked Razina if she had an argument with Park in 2023 where her hand was "moving within 12 inches" of Park's face. Razina replied, "I don't remember." The court stated, "I will now see for myself whether the hand gesture was enough in a vacuum [to] call it abusive." After watching the video the court summarized it: Razina was the "aggressor" in a "mostly one-sided" argument and gestured with her hands "throughout the argument." Razina at times gestured "close to" Park's face, "but far less than" what the court "would describe as jabbing." At one point, it appeared Razina jabbed her fingers in Park's face, but as the video continued to play, the video showed Razina was "gesturing toward a camera at the far end of a long room." The court found that both women moved about the room "casually" and that neither of them showed "any sign of fear or imminent physical assault." The court concluded the incident was "less in

4

reality than described in the moving paperwork" and did not "in and of itself constitute elder abuse."

Counsel for Park stated he had another video that showed "more serious" conduct, and Park described an incident in 2023 where Razina and her daughter walked behind Park while laughing and mimicked her limp. Park admitted she was not aware Razina and her daughter were making fun of her because they were behind her back. The court found the conduct Park described, while not "classy or polite," was not directed at Park or abusive.

Counsel for Park referred the court to Park's declaration for a description of the final video Park believed showed Razina abused her. The court read the declaration and confirmed with Park that, in the final incident, Razina "chased" Park while filming her. After the court watched the video, the court described it: Park's back was turned to Razina and Razina's son as they mimicked Park's movements and walk. The court found the conduct, while "discourteous" and "rude," was "calculated not for [Park] to see" and in fact was "just the opposite." The court stated that the video did not show Park was "chased" and that Razina's conduct showed "a level of humor and mirth at the expense of [Park], but without [Park] knowing." The court concluded: "This is not abuse. This is not something that belongs in a court." The court also observed the conduct depicted in the video was two years old. Referring to the "more serious conduct from 2019 in Russia," the court stated, "This is simply nothing that comes close to something that should be in front of a domestic violence or elder abuse restraining order court."

Counsel for Park argued that the incident in Russia showed Park "would be intentionally in anticipation of physical harm,

even though it wasn't shown" in the video, and that elder abuse "can be emotional distress, emotional harm, or provoking a preexisting emotional harm."[2]  Counsel asked the court to consider, "in the context of the totality," that the conduct was "more serious than just what's in front of the court, based on the prior conduct."  The court stated, "I absolutely did consider it." The court questioned why "somebody" (presumably, Park's son) "brought this to the attention of [Park], rather than maybe discretely" telling Razina to stop making fun of Park.  Regarding the 2023 incidents, the trial court said it "looked for a sense of physical fear" because, as the court explained, "if 2019 did happen," the court "would expect to see fear shown by [Park], and there [was] none."

The court denied Park's petition, concluding:  "What I saw is not abuse.  It's not even close."  Park timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

"The overarching goal of the Elder Abuse and Dependent Adult Civil Protection Act (§ 15600 et seq.; Elder Abuse Act), as articulated by the Legislature, is to protect vulnerable elderly adults from abuse and neglect."  (*White v. Wear* (2022) 76 Cal.App.5th 24, 34.)  Section 15657.03, subdivision (a), provides:  "An elder or dependent adult who has suffered abuse, as defined in Section 15610.07, may seek protective orders as

---

[2]    Counsel actually said, "I also don't believe the elder abuse can be emotional distress, emotional harm or provoking a preexisting emotional harm."  Counsel probably meant to say he believed elder abuse encompassed emotional distress.

provided in this section."[3]  (See *Newman v. Casey* (2024)
99 Cal.App.5th 359, 374; *Darrin v. Miller* (2019) 32 Cal.App.5th
450, 454.)  Section 15610.07, subdivision (a), defines abuse to
include "[p]hysical abuse, neglect, abandonment, isolation,
abduction, or other treatment with resulting physical harm or
pain or mental suffering." (See *Newman*, at p. 374; *White*, at
p. 34.)  "'Mental suffering' means fear, agitation, confusion,
severe depression, or other forms of serious emotional distress
that is brought about by forms of intimidating behavior, threats,
harassment, or by deceptive acts performed or false or misleading
statements made with malicious intent . . . ." (§ 15610.53; see
*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 526-527.)  The
court may issue a protective order under 15657.03, "with or
without notice, to restrain any person for the purpose of
preventing a recurrence of abuse, if a declaration shows, to the
satisfaction of the court, reasonable proof of a past act or acts of
abuse of the petitioning elder or dependent adult." (§ 15657.03,
subd. (c); see *Newman*, at p. 375; *Bookout v. Nielsen* (2007)
155 Cal.App.4th 1131, 1137.)

"The petitioner has the burden to prove a past act of elder
abuse by preponderance of the evidence." (*Darrin v. Miller*,
*supra*, 32 Cal.App.5th at p. 454; accord, *Herren v. George S.*
(2025) 109 Cal.App.5th 410, 427.)  A protective order under the
Elder Abuse Act "may issue on the basis of evidence of past

---

[3]     The protective order, among other things, may enjoin a
party from "abusing, intimidating, molesting, attacking, striking,
stalking, threatening, sexually assaulting, battering, harassing,
telephoning, . . . destroying personal property, contacting, . . . or
disturbing the peace of, the petitioner." (§ 15657.03,
subd. (b)(5)(A).)

abuse, without any particularized showing that the wrongful acts will be continued or repeated."  (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137; accord, *Gordon B. v. Gomez* (2018) 22 Cal.App.5th 92, 99.)

"Generally, 'the issuance of a protective order under the Elder Abuse Act is reviewed for abuse of [discretion], and the factual findings necessary to support such a protective order are reviewed under the substantial evidence test.'"  (*Newman v. Casey*, *supra*, 99 Cal.App.5th at p. 375; see *Bookout v. Nielsen*, *supra*, 155 Cal.App.4th at p. 1137.)  However, "'where the trier of fact has determined that the party with the burden of proof did not carry its burden and that party appeals, "it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment."  [Citations.]  Instead, "where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence *compels a finding in favor of the appellant as a matter of law*."  [Citation.]  Specifically, we ask "whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"'"  (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651; accord, *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 163-164; see *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 579 [where ""'the judgment is against the party who has the burden of proof, it is almost impossible for him [or her] to prevail on appeal by arguing the evidence compels a judgment in his [or her] favor'"" because, ""'unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found [that party's] evidence lacks sufficient weight and

credibility to carry the burden of proof"""].)[4] """[W]hether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.""" (*Gordon B. v. Gomez, supra*, 22 Cal.App.5th at p. 98; see *Tanguilig v. Valdez, supra*, 36 Cal.App.5th at p. 524 [we review de novo whether the trial court applied the correct burden of proof].)

> B.     *The Trial Court Did Not Require Park To Show a Current Risk of Abuse, and the Court Considered All the Evidence Park Presented (Including the 2019 Incident in Russia)*

Park argues that the trial court applied "a non-statutory 'remoteness' bar," as shown by the court's ruling that "expressly turned on that the events were 'two years old'" (capitalization omitted), and that her evidence of past abuse "was independently sufficient to warrant a protective order." Park mischaracterizes the court's ruling. The court found none of the incidents from 2023 amounted to abuse. The court commented the 2023 events were remote, but nothing in the record indicates the court improperly discounted Park's evidence for this reason. Instead, as discussed, the court found the alleged incidents of abuse, regardless of when they occurred, did not constitute abuse. Park

---

[4]     *Jennifer K.* was an appeal from an order denying a request for a domestic violence restraining order under Family Code section 6300. "Because a protective order specific to elder abuse is of relatively recent vintage, cases interpreting the statute have looked to analogous procedures governing domestic violence restraining orders under Family Code section 6300 et seq." (*Gordon B. v. Gomez, supra*, 22 Cal.App.5th at p. 98.)

9

stated in her declaration Razina's conduct caused her fear and distress, but the court disbelieved her,[5] a credibility finding we cannot disturb. (See *Jennifer K. v. Shane K.*, *supra*, 47 Cal.App.5th at p. 579 ["As the exclusive judge of the credit and weight to be given to the testimony of a witness, the trier of fact may reject the testimony of a witness even if . . . it is uncontradicted."]; *Bookout v. Nielsen*, *supra*, 155 Cal.App.4th at p. 1141 ["It was for the trial court to weigh the evidence and consider the demeanor and credibility of the witnesses."].) Aside from Park's declaration and her testimony at the hearing, the record consists of black and white photographs of Park's face, hands, and legs and still images of Park and Razina interacting in a room; translations of what Razina said in Russian on the videos (though not the actual video recordings); and copies of text messages Razina sent Park's son. None of this evidence compels a finding in Park's favor as a matter of law. (See *Estes v. Eaton Corp.*, *supra*, 51 Cal.App.5th at p. 651; see also *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["'[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]'"].)

Park also asserts the trial court abused its discretion "by ignoring the combined force of severe past abuse [citation], new, close residential proximity—[Park] now lives 0.6 miles from [Razina] [citation]—and a nearly two-year stream of demeaning messages to her son falsely accusing [her] of 'dementia' and 'psychosis.'" The record does not support Park's assertion. The court gave Park an opportunity to present all the evidence she

---

[5]  For example, the court found Razina did not, as Park claimed, jab her fingers at or chase Park.

believed showed Razina abused her, considered each incident, and found the incidents did not (individually or collectively) amount to abuse. Park has not shown the court failed to consider her evidence. (See *Jameson v. Desta, supra*, 5 Cal.5th at p. 609 ["a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"]; *Samara v. Matar* (2018) 5 Cal.5th 322, 335 [same]; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .'"]; *Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 470 [same].) That the court found the evidence Park presented did not show elder abuse does not mean the court failed to consider it. To the contrary, the court's assessment of each incident, which included the court's description of what the video of each incident showed, confirms the court thoroughly reviewed all of Park's evidence.

Contrary to Park's argument, the trial court considered the 2019 incident in Russia. After explaining why the evidence Park presented from 2023 did not constitute abuse, the court stated that, even considering the "more serious conduct from 2019 in Russia," the incident did not approach the kind of conduct required for a restraining order under the Elder Abuse Act. The court also questioned whether the 2019 incident even occurred, commenting that, if it did, Park would have appeared more afraid of Razina during the 2023 incidents. The record does not support Park's argument the court did not consider her allegation Razina abused her in Russia.

11

C.     *The Trial Court Did Not Err by Improperly*
       *Discounting Park's Evidence of Mental Suffering*

Park contends the court erred by narrowing "the definition of 'abuse' to the threat of physical violence," which in Park's view "improperly marginalized [her] non-physical abuse evidence." Park also contends the court erred by requiring "an outward display of fear as a prerequisite for a finding of abuse." (Capitalization omitted.)  Again, Park misreads the record.  The court's statement it looked in the videos for "a sense of physical fear" did not mean the court only considered evidence of physical abuse.  The court also stated it was looking for "fear" in a general sense, which is a form of mental suffering under section 15610.53.  (See *Tanguilig v. Valdez, supra*, 36 Cal.App.5th at pp. 526-527.)  The court found Park's blanket assertion of mental suffering insufficient and searched for evidence Park experienced mental suffering.  The court's identification of fear as a factor it considered did not mean the court failed to consider other factors relevant to a finding of mental suffering.  We presume the court considered all the relevant evidence on this issue.  (See *Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609.)  In addition, because Park claimed in her declaration Razina caused her to be fearful, the court reasonably focused on that factor at the hearing.  That the court ruled against Park does not mean the court "marginalized" her evidence of mental suffering.

Park also argues the trial court erred by discounting the videos showing Razina mocked Park "on the ground it occurred 'behind her back' and 'without [Park] knowing,' treating [the] lack of contemporaneous awareness as disqualifying."  The court, however, reasonably concluded Razina's behavior behind Park's

12

back was not abuse. As the court commented, had Park's son not later told her about the incident, Park would not have known about it and would not have experienced any humiliation or embarrassment. Park essentially disagrees with the court's findings that Razina's behavior was rude and discourteous but not abusive and that the conflict between the two women over household matters did not justify an elder abuse restraining order. Park has not shown that the trial court applied an incorrect legal standard (see *Samara v. Matar*, *supra*, 5 Cal.5th at p. 335) or that the evidence compels a finding in her favor as a matter of law (see *Estes v. Eaton Corp.*, *supra*, 51 Cal.App.5th at p. 651).

> D.     *The Trial Court Did Not Abuse Its Discretion, and Park Forfeited Her Evidentiary Challenge*

Park argues the trial court abused its discretion in (1) "applying contradictory and illogical reasoning," (2) "refusing the required totality-of-the-circumstances review," and (3) "restricting live percipient/foundation testimony and review of key exhibits." (Capitalization omitted.) The first two arguments are meritless; the third is forfeited.

First, though the trial court initially stated it did not have jurisdiction over the alleged incident in Russia, the court considered Park's evidence of that incident. There was nothing contradictory or illogical about that. The court properly determined the allegation did not amount to abuse, and even questioned whether the allegation was true. As discussed, Park's disagreement with the court's credibility findings is not a reason to reverse the court's order denying her petition.

13

Second, the court stated it would consider all the evidence the parties submitted, and the record confirms the court did that. (See *Samara v. Matar*, *supra*, 5 Cal.5th at p. 335.)  It is true the court found the finger-jabbing incident did not constitute abuse. But that comment reflected the court's stated methodology of examining each incident individually before considering all the evidence together, which the court confirmed it did when counsel for Park asked the court to consider the incident from Russia "in the context of the totality."

Third, counsel for Park told the court Park intended to call her son to "lay the foundation" for the videos, but the court stated:  "So, in terms of whether or not we will run the hearing the way you planned, the answer is no."  Counsel for Park said, "Okay."  The court stated that Park's son could come into the courtroom "for the purpose of facilitating the video" and that Park's son was "not being called as a witness now."  The court did not rule Park could not call her son as a witness, and Park never sought to call him.  To the extent the court's statements constituted an evidentiary ruling, Park forfeited her challenge by failing to object in the trial court.  (See *Tanguilig v. Valdez*, *supra*, 36 Cal.App.5th at p. 523 [appellant forfeits an argument by failing to raise it in the trial court]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726 [same]; *Allin v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators* (1952) 113 Cal.App.2d 135, 138 ["One who by his conduct accepts a ruling of the court under circumstances amounting to acquiescence therein, may not complain of it on appeal."].)

## DISPOSITION

The order denying Park's request for an elder abuse protective order is affirmed.  Park's motion to augment the record is denied.  Razina is to recover her costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.