Filed 1/20/23  Castronovo v. Castronova CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CATHERINE CASTRONOVO et al., | D079272 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2017-00045254-PR-TR-CTL) |
| MARY ELLEN CASTRONOVO, as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey S. Bostwick, Judge.  Affirmed.

Samantha Castronovo, in pro. per., for Plaintiff and Appellant.

Catherine Castronovo, in pro. per., for Plaintiff and Appellant.

Sandra Bonds-Hickey; Karcher Harmes and Kathryn E. Karcher, for Defendant and Respondent.

Following a bench trial in a probate proceeding, Catherine and Samantha Castronovo appeal from the trial court's order denying their

petition to invalidate a trust and trust amendment created by their late mother, Mary Castronovo.[1]

As we will explain, we conclude that neither Catherine nor Samantha have asserted meritorious appellate arguments. Accordingly, we affirm the trial court's order denying the petition to invalidate.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mary and Sam Castronovo had three children: Mary Ellen, Catherine, and Samantha. In 2007, Mary and Sam each created a will, which set forth the following disposition of their property after the last of them died: $10,000 to Samantha "with consideration for past consideration paid to her"; one-eighth of the net estate to Catherine "with consideration for past consideration paid to her"; one-eighth of the net estate to each of three grandchildren; and the balance of the net estate to Mary Ellen, including "the residence and contents." Sam died in June 2015. A few months after Sam's death, Mary created a trust titled The Mary F. Castronovo Trust Dated September 30, 2015 (the Trust), which named Mary and Mary Ellen as co-trustees.

The Trust stated that upon Mary's death, the property of the Trust would be distributed as follows: (1) Mary Ellen would get real property in Alameda, California, as well as all Trust assets that remained after the distributions to other parties; (2) Samantha would get $10,000; (3) Catherine would get one-eighth of the Trust assets; and (4) three grandchildren would each get one-eighth of the Trust assets. The Trust stated that for both

---

[1] Because the relevant family members all share the same last name, we will refer to them by their first names for the sake of clarity, and we intend no disrespect by doing so.

Samantha and Catherine, the amount of each of their distributions was "with consideration for past distributions paid to her."

In February 2017, Mary created a First Amendment to the Trust (the First Amendment). The First Amendment changed the distribution of the Trust assets in the following respects: (1) Mary Ellen was given an additional real property, located in Oceanside, California; and (2) the $10,000 given to Samantha would be reduced by any damages caused by Samantha or her family to a real property in San Diego, owned by the Trust, where Samantha was residing.

Mary died on June 28, 2017, making Mary Ellen the sole trustee of a now-irrevocable trust.[2]

On November 27, 2017, Catherine and Samantha (represented by counsel) filed a petition to invalidate the Trust and the First Amendment (the Invalidation Petition). The Invalidation Petition alleged three theories of invalidity: (1) Mary lacked capacity to create the Trust and the First Amendment; (2) Mary was unduly influenced by Mary Ellen in creating those documents; and (3) Mary created the Trust and First Amendment under a mistake of fact which arose from diminished mental capacity or undue influence.

On March 5, 2018, Mary Ellen, on behalf of herself as a beneficiary, filed a petition seeking an order disinheriting Samantha and Catherine on

---

[2] The parties inform us that Mary Ellen died in September 2021. The respondent's brief, filed by the Trust, explains that this action may continue in Mary Ellen's name pursuant to Code of Civil Procedure section 368.5. (Code Civ. Proc., § 368.5 ["An action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest. The action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding."].)

the grounds that their petition violated the Trust's no contest clause (the Disinheritance Petition).

In June 2019, Catherine (represented by counsel) filed an ex parte application requesting an order requiring a preliminary distribution to Catherine from the Trust estate in the amount of $10,000. On July 5, 2019, the trial court granted the request on the condition that Catherine execute a note for the amount of the distribution secured by her residence, with the Trust to be placed in secured position immediately behind prior secured creditors.

On November 8, 2019, Catherine (now representing herself), filed an ex parte application stating that she objected to the lien as a condition of the preliminary distribution. On November 19, 2019, the trial court denied the ex parte application, explaining that it was an improper request for reconsideration of its July 5, 2019 ruling.

The trial court held a bench trial on the Invalidation Petition and the Disinheritance Petition. The trial took place on six days between November 2020 and April 2021. The Trust was represented by counsel during the trial. Samantha and Catherine represented themselves. The trial was held remotely due to the pandemic. Several witnesses testified in addition to Samantha, Catherine and Mary Ellen. Those witnesses included (1) Mary's estate planning attorney; (2) an attorney whom Mary retained in 2016 to start the process of evicting Samantha from real property; (3) Mary's primary care physician; and (4) a social worker who interacted with Mary in the hospital in 2017.

The trial court ruled from the bench on the last day of trial and then issued a written ruling on May 18, 2021. The trial court denied both the Invalidation Petition and the Disinheritance Petition.

4

With respect to the Invalidation Petition, the trial court explained that Samantha and Catherine had not met their burden to establish that Mary created the Trust or the First Amendment under circumstances indicating lack of capacity or undue influence.[3]

The trial court explained that "the only testimony offered suggesting Mary lacked capacity was from Catherine and Samantha," which was "contradicted by no less than four professionals, two of whom Mary did not hire." The trial court explained, "There is simply no independent evidence that Mary did not understand the nature of her actions in executing the Trust or the [First] Amendment, the nature of her property or the nature of her relations, or those persons whose interests are affected by the Trust and the [First] Amendment. There is simply no evidence that Mary suffered from any mental deficit that would rebut the presumption that she had capacity when she executed the Trust and the [First] Amendment."

Regarding undue influence, the trial court explained that "the professionals' testimony rebuts Catherine and Samantha's arguments on this theory." The trial court stated that "the only evidence suggesting undue influence is Samantha's and Catherine's unpersuasive self-serving testimony," but that "[t]he professionals' testimony demonstrates that none of the factors of undue influence is present." Among other things, the professionals "each testified that Mary was not vulnerable. There is no evidence that Mary Ellen ever assumed authority over Mary or that other tactics of undue influence existed. . . . There was no evidence of coercion presented to the Court."

---

[3] Moreover, because the cause of action alleging mistake of fact was premised solely on the theory of lack of capacity or undue influence, the trial court ruled that claim was also not meritorious.

With respect to the Disinheritance Petition, the trial court determined it was not meritorious because a reasonable person could have concluded there was a reasonable likelihood that the relief requested in the Invalidation Petition would be granted after further investigation or discovery.

Samantha and Catherine both filed notices of appeal and appellate briefs. Samantha and Catherine are both self-represented.

## II.

## DISCUSSION

A.  *Catherine's Appellate Briefing*

Catherine filed both an opening appellate brief and a reply brief. Catherine's opening brief contains 19 pages of discussion, and her reply brief contains 15 pages of discussion.

We begin our discussion of Catherine's briefing by reviewing the rules governing an appellant's burden to submit briefing that conforms to the applicable rules and sets forth cogent and cognizable legal argument. "The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [it] wants us to adopt." (*Id.* at pp. 286-287.) A party's brief must "[s]tate each point under a separate

6

heading or subheading . . . , and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "Appropriate headings require litigants to ' "present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass." ' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

" 'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.) " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204 (*Flores*).) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

We are mindful that Catherine represents herself, which, for a person untrained in the law may be a difficult task. Nevertheless, "as a party appearing in propria persona, [she] 'is entitled to the same, but no greater, consideration than other litigants and attorneys.' " (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) " '[A]s is the case with attorneys, [self-represented] litigants must follow correct rules of procedure.' " (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31; see also *Flores*, *supra*, 224 Cal.App.4th at p. 205 ["The same rules apply to a party appearing in propria persona as to any other party."].)

We have closely reviewed both of Catherine's briefs. Although lengthy, Catherine's appellate briefing does not make any specific legal arguments, is not organized under specific argument headings, and does not support its discussion with any citations to the record or to any appropriate legal authority. Because of these deficiencies, we are unable to ascertain the legal arguments, if any, that Catherine intends to advance. We therefore conclude Catherine has forfeited her appellate claims by not adequately developing them in the manner required for appellate review.

B.    *Samantha's Appellate Briefing*

Samantha filed an opening appellate brief setting forth five pages of substantive discussion. Samantha's brief advances cognizable legal arguments, accompanied by citation to legal authority, and it attempts to provide citations to the record. Although Samantha's arguments are disorganized and challenging to follow, we conclude that they are sufficiently developed for us to address them on the merits.

1.    *The Trial Court's Exclusion of Two Witnesses on Relevance Grounds*

We first address Samantha's contention that the trial court erred in excluding evidence about the circumstances of Mary's death. We apply an abuse of discretion standard when reviewing the trial court's decision to exclude evidence. (*People v. Case* (2018) 5 Cal.5th 1, 46 [" ' "A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "].)

a.    *Dr. Magana*

In her arguments challenging the trial court's evidentiary rulings, Samantha principally focuses on the contention that the trial court erred

8

with respect to its rulings concerning Dr. Marisa Magana, whom Samantha and Catherine called as a witness at trial.

Dr. Magana works in the intensive care unit at the hospital where Mary died. Dr. Magana had no specific memory of treating Mary in the hospital. However, Samantha attempted to have Dr. Magana authenticate and provide testimony about a hospital record relating to Mary's death, which Samantha referred to as a "death summary."

Due to difficulties arising from the remotely-held trial, Dr. Magana did not have the death summary in front of her during her testimony and was accordingly unable to answer questions about it. Samantha asked the trial court whether it would "be possible to complete questioning for this moment but reserve the right to bring [Dr. Magana] back" after she had the document in front of her. Opposing counsel responded by moving to have Dr. Magana excused altogether on the ground that Dr. Magana did not have any information that was relevant to the issues before the court, namely the validity of the Trust and the First Amendment. The trial court agreed with opposing counsel and excused Dr. Magana. As the trial court explained, "The topic of the lawsuit is, as counsel pointed out, not a wrongful death action."

Samantha challenges the trial court's ruling, which she characterizes as "not allow[ing]" the death summary "to be uploaded during a remote trial." Samantha argues that "[i]n a regular courtroom trial she could have simply walked the evidence across the room to be authenticated." In support of her argument that "[t]he trial court erred in not allowing evidence to be uploaded during the remote hearing" (underscoring omitted), Samantha cites an

inapposite provision of the Evidence Code[4] and she generally asserts that the trial court's ruling violated "[o]ne of the basic rules of evidence."

Samantha's challenge to the trial court's ruling fails because it does not grapple with the basis for the trial court's ruling concerning Dr. Magana. Samantha focuses only on her inability to upload the death summary document during the remotely-held trial. However, regardless of Samantha's problems with attempting to present the document to Dr. Magana during the remotely-held trial, Samantha was ultimately unable to obtain Dr. Magana's testimony regarding the document for a *different* reason, which she does not acknowledge or address in her appellate briefing. Specifically, the trial court ruled that Dr. Magana's testimony would not be relevant to any of the issues presented at trial.

Only relevant evidence is admissible (Evid. Code, § 350), and "[t]he trial court has broad discretion . . . in determining the relevance of evidence" (*People v. Horning* (2004) 34 Cal.4th 871, 900). Here, the Invalidation Petition alleged Mary lacked capacity and was unduly influenced when she executed the Trust in September 2015 and the First Amendment in February 2017. Mary died on June 28, 2017, after a brief hospitalization, which began on June 23, 2017. The trial court could reasonably conclude that the circumstances surrounding Mary's death in June 2017, which was several months after she executed the First Amendment in February 2017 were not relevant to those issues.

---

4    Specifically, Samantha quotes Evidence Code section 911, which states that a person does not have a privilege to refuse to be a witness or produce evidence. That provision is inapplicable here because the issue is whether the trial court was within its discretion to make the challenged evidentiary ruling, not whether any witness had a privilege to refuse to participate.

Throughout her appellate briefing, as she did during the trial, Samantha makes statements suggesting that the issues properly before the trial court included an exploration of Mary Ellen's role during Mary's death. For example, in her appellate brief Samantha states that Mary Ellen "had access to [Mary] in the days before her passing and made decisions about [Mary's] care that caused her questionable needless passing with sedative care rather than 'lifesaving' care." She also contends that Mary Ellen made "critical decisions regarding the care of [Mary]" that "eventually led to the decision of her being given a med that caused cardiac arrest" and did not allow "basic resuscitation to be performed to bring [Mary] to life again." (Underscoring omitted.) However, as the trial court reasonably concluded during the trial, such allegations were not within the scope of the issues presented by the Invalidation Petition, which was focused on the question of whether Mary lacked capacity or was subject to undue influence at the time she created the Trust and the First Amendment.

At oral argument, Samantha argued that testimony about the circumstances of Mary's death was relevant, and should have been admitted by the trial court, based on what she referred to as "the slayer's rule." Although Samantha did not provide a citation for that rule, we infer she is referring to Probate Code section 250. That provision states that "[a] person who feloniously and intentionally kills the decedent is not entitled to any of the following: (1) Any property, interest, or benefit under a will of the decedent, or a trust created by or for the benefit of the decedent or in which the decedent has an interest . . . ." (Prob. Code, § 250, subd. (a).) It also states that "[a]ny nomination in a will or trust of the killer as executor, trustee, guardian, conservator, or custodian which becomes effective as a result of the death of the decedent shall be interpreted as if the killer had

11

predeceased the decedent." (*Id.*, § 250, subd. (b)(3).)  As we understand Samantha's argument, evidence about the circumstances of Mary's death was relevant to show that Mary Ellen was disqualified as a beneficiary and as a trustee under Probate Code section 250.  For two reasons, we reject Samantha's attempt to rely on "the slayer's rule" to establish that the trial court abused its discretion in excluding evidence about the circumstances of Mary's death.  First, Samantha did not identify "the slayer's rule" when arguing in the trial court for the admission of testimony about the circumstances of Mary's death.  Accordingly, the trial court cannot be faulted for failing to allow testimony on that basis.  Second, the Invalidation Petition did not seek relief against Mary Ellen based on Probate Code section 250.  Thus, even if Samantha had requested that certain testimony be admitted based on Probate Code section 250, the trial court would have been within its discretion to exclude it as irrelevant to any issue raised by the pleadings.

        b.    *Dr. Levin*

Samantha's appellate briefing also takes issue with a second evidentiary ruling by the trial court excluding evidence about the circumstances of Mary's death.

Samantha and Catherine sought to present the expert testimony of Dr. Mark Levin.  During trial, before allowing Samantha or Catherine to elicit expert testimony from Dr. Levin, the trial court permitted opposing counsel to conduct voir dire examination of him.  During voir dire examination, Dr. Levin testified that the scope of his expert opinion concerned only whether there was a possibility that Mary might have survived on June 28, 2017, if more aggressive measures were used to treat her.  Dr. Levin also stated that he had no opinion about Mary's mental capacity or whether she was subject to undue influence.  After voir dire,

12

opposing counsel moved to exclude Dr. Levin on the ground that his planned testimony was "absolutely irrelevant to the claims in this case, which are the claims that the 2015 Trust and the 2017 [First] Amendment should be declared void because of undue influence or lack of mental capacity." The trial court granted the motion to exclude Dr. Levin, explaining that "[t]he witness can offer no expert opinion on any issue relevant to these proceedings."

Samantha does not present any specific legal argument challenging the trial court's ruling regarding Dr. Levin, but she does complain in general that "[m]edical expert testimony was not allowed" even though "[t]he medical expert was ready and available to give . . . testimony at trial." Whatever specific legal challenge Samantha might intend to raise with respect to the trial court's ruling regarding Dr. Levin, it would fail for the same reason as the challenge regarding the evidence Samantha sought to illicit through Dr. Magana. As we have explained, the trial court was well within its discretion to conclude that evidence concerning Mary's death was irrelevant to the matters at issue during the trial.

2. *Substantial Evidence Supports the Trial Court's Finding on Undue Influence*

Samantha's final challenge is to the sufficiency of the evidence to support the trial court's finding that Catherine and Samantha failed to meet their burden to prove Mary was subject to undue influence when she created the Trust or First Amendment. We apply a substantial evidence standard when, as here, we review a challenge to a trial court's findings of fact during a bench trial. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) "Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most

favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Ibid*.)

The definition of "undue influence," as defined by statute in Welfare and Institutions Code section 15610.70, subdivision (a), applies in probate litigation. (Prob. Code, § 86.) " 'Undue influence' means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." (Welf. & Inst. Code, § 15610.70, subd. (a).) As the statutory language provides, in determining undue influence a court should consider the vulnerability of the victim, the influencer's apparent authority, tactics used to unduly influence, and the equity of the result. (*Ibid*.)

In its ruling, the trial court set forth a lengthy explanation of the evidence that led it to find that Samantha and Catherine did not meet their burden to establish that Mary was subject to undue influence at the time she executed the Trust or the First Amendment. Specifically, as the trial court observed, multiple professionals testified that they did not see any indication that Mary Ellen exercised undue influence over Mary. These professionals included Mary's primary care doctor, the estate planning attorney who drafted the Trust and the First Amendment, and the social worker who met with Mary in the hospital shortly before her death. The trial court concluded that "[t]he professionals' testimony demonstrates that none of the factors of undue influence is present."

Based on our review of the trial transcript, the trial court's description of the evidence is accurate, and its finding regarding undue influence is supported by substantial evidence. Multiple witnesses offered testimony that reasonably supports the trial court's finding that Catherine and Samantha

14

failed to meet their burden to prove that Mary was subject to undue influence when she entered into the Trust and the First Amendment.

With respect to the trial court's finding on undue influence, Samantha contends that "the judge in the trial court did bad law and erred in his decision by saying the only professionals' opinions were in support of Mary Ellen." Samantha points to two instances of witness testimony that, in her view, undermine the trial court's finding regarding undue influence. We consider each in turn.

First, Samantha argues that Mary's estate planning attorney, Michael McCarthy, testified that "he had not been present with [Mary] 24/7 and could not guarantee there was no undue influence." Although Samantha does not provide an exact record citation, she is apparently referring to the following exchange during her examination of McCarthy:

"Q. Can you be sure [Mary] had no input from anyone regarding the trust in between the meetings you had with her forming the draft through the signing of the final document?

"A. No, she could have talked to anybody.

"Q. So you're not sure if there was anyone, if anyone else, influencing how the draft and final document was written?

"A. I saw no influence.

"Q. You saw no influence based—is it correct that you saw no influence based only on what you saw at your professional offices?

"A. Correct.

"Q. And is it true that there were many hours, if not days, in between creating the drafts and then signing the final document?

"A. Very true."

We understand the point that Samantha effectively highlighted through her cross-examination: there could have been influence brought to bear on Mary that McCarthy did not witness. However, on appeal, in a review for substantial evidence " ' "[i]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it." ' " (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292.) Despite McCarthy's limited opportunities to interact with and observe Mary during the period when she entered into the Trust and the First Amendment, the trial court nevertheless was entitled to credit McCarthy's testimony and to give it weight as one component of its finding that Samantha and Catherine failed to meet their burden to prove that Mary was subject to undue influence when she executed those documents.

Second, Samantha argues that the social worker who interacted with Mary during her last hospitalization in June 2017 "admitted in testimony she had not verified Mary Ellen was carrying paperwork that showed she had power of attorney to make life and death decisions for Mary." In our assessment, this fact has little, if any, relevance to the issue of whether substantial evidence supports the trial court's finding on undue influence. As we have explained, the relevant time frame for the undue influence claim is during September 2015 and February 2017 when the Trust and the First Amendment were executed. Whatever a social worker may have been told about a power of attorney during Mary's last hospitalization in June 2017 is not relevant to whether Mary was subject to undue influence in earlier time periods.

16

In sum, we conclude that Samantha has not succeeded in establishing that insufficient evidence supports the trial court's finding on undue influence.

## DISPOSITION

The trial court's order denying the Invalidation Petition is affirmed.


IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


BUCHANAN, J.

17