Filed 4/25/23 Marriage of Nguyen and Van CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ANH DAO NGUYEN and MIKE VAN. | H049612 (Santa Clara County Super. Ct. No. 2014-1-FL-169508) |
| ANH DAO NGUYEN, Respondent, v. MIKE VAN, Appellant. | |

Appellant Mike Van (Father), appeals from orders issued by the Santa Clara County Superior Court allowing respondent Anh Dao Nguyen (Mother) to move with the parties' children to New Jersey. In November 2019, this court issued an opinion (*In re Marriage of Nguyen & Van* (Nov. 22, 2019, H045348, H046071, H046644 [nonpub. opn.] (*Nguyen & Van*)) reversing the trial court's move-away order, and remanding the matter back to the trial court "to establish initial permanent custody and visitation orders, and for reconsideration of Mother's request to relocate the children out of state." (*Nguyen & Van*, at p. 12.) The trial court held new proceedings after remand, and affirmed its prior decision giving Mother sole physical custody of the children in New Jersey. On appeal, Father contends the trial court abused its discretion in doing so. He claims the trial court failed to consider the proper factors and evidence to determine the children's best interest. Finding no error in the order we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In March 2017, the trial court issued an order (the March 2017 order) awarding the parties joint legal custody of their two children,[2] with Mother having sole physical custody and the right to establish a residence for the children in New Jersey. Our opinion in *Nguyen & Van*, *supra*, sets forth the factual and procedural history leading to the issuance of the March 2017 order, and we will not repeat it here.[3]

---

[1] This court's ability to discuss the background of the subject custody order is limited by Father's designation of the record on appeal. The record on appeal includes reporter's transcripts for only three of the seven days of trial noted in the clerk's transcript. The minute orders for the transcripts not included in the record indicate that a court reporter was present at each hearing. Father did not designate the reporter's transcripts for those hearings. Father cites to the record filed in several other appeals arising from the underlying trial court action, implicitly asking this court to take judicial notice of those records. We will take judicial notice of the clerk's transcript and reporter's transcript filed in appeal number H045348, as well as the appendices Father filed in appeal numbers H046071/H046644 and H047168, and the reporter's transcripts filed in H047168.

[2] To protect the privacy of the children, we will refer to them as "the children" and/or "son" and "daughter."

[3] Subsequent to the March 2017 order, the trial court issued additional orders following multiple requests by Father to modify the custody order. Relevant to Father's claims here, in March 2018, Father sought joint legal and physical custody of the children, claiming that Mother failed to comply with the March 2017 order by "fail[ing] to facilitate his visitations with the children, and fail[ing] to properly care for the children in New Jersey." (*Nguyen & Van*, *supra*, at p. 10.) On May 2, 2018, the court ordered the parties to participate in custody mediation. (*Ibid.*) Father filed a notice of appeal from this order, which we designated as docket number H046071. (*Ibid.*) Prior to mediation, Father filed "yet another request to modify custody and visitation, alleging Mother was delegating her duty to care for the children to her mother, who Father claimed did not have sufficient ability to properly care for the children." (*Ibid.*) The court denied Father's request on September 26, 2018. (*Ibid.*) Father appealed, in appeal number H046644. (*Id.* at p. 11.) When we reversed the March 2017 order, we dismissed appeal numbers H046071 and H046644 as moot. In his appellant's opening brief here, Father again asks this court to review the May 2018 and September 2018 orders. While we will consider the factual allegations Father made relative to those orders as appropriate, we decline to review them, as they were rendered moot by our opinion in *Nguyen & Van*, *supra*.

This court reversed the March 2017 order because the trial court incorrectly applied Family Code section 3011.[4] (*Nguyen & Van*, *supra*, at pp. 16-20.) In the children's best interest, we ordered the then-current custody and visitation orders to remain in place pending a new order from the trial court or the agreement of the parties, and afforded the trial court discretion to allow the children to remain in Mother's custody pending the resolution of her move-away request. (*Id.* at p. 23.)

After we issued the remittitur remanding the custody issue back to the trial court, the court set a new trial for May 2020. In March 2020, the court specified that the children could remain in New Jersey pending the trial. It cancelled the children's visit to California in April 2020 for unspecified reasons. Presumably due to the onset of the Covid-19 pandemic, the court thereafter continued the trial.

In July 2020, Father sought emergency orders requiring Mother to send the children to California for summer visitation. The trial court denied Father's request, finding that it was not safe for the children to fly due to the pandemic, the children's age, and the son's asthma, which put him at greater risk for Covid-19. While the court acknowledged Father's past claims that Mother did not support Father's visitation, it stated that the pandemic was the cause of the cancellation, not Mother. The court ordered that Father could visit the children in New Jersey, as long as he complied with any quarantine requirements in force in the state. It also ordered Mother to pay up to $1,000 towards Father's visit in New Jersey.

During the hearing, the court addressed Father's contention that Mother was not able to provide appropriate educational support for the children, such that he was required to conduct long daily video sessions with the children to help them with their schooling. After the children's appointed attorney suggested that such lengthy video visits were not beneficial to the children, and Mother confirmed that she was helping the children in a

---

[4] Subsequent unspecified statutory references are to the Family Code unless otherwise indicated.

3

way she believed was appropriate, the court ordered that Father's participation in video home schooling would be at Mother's discretion, with such video visits limited to 20 minutes. While the trial court initially ordered the parties to obtain an updated custody evaluation, based on Father's objection at the July 2020 hearing, the court ordered that there would not be an update unless Mother paid for it herself, which she claimed she was not able to do.

After the court scheduled a new date for the custody trial, Father filed a request to have the parties' son testify at the trial, claiming that the son had expressed a desire to move back to California to live with Father. Mother objected to the request, as she did not want the children to be involved in the parties' custody dispute. The children's attorney noted that the son was 12 years old at the time, and thus not within the purview of section 3042.[5] Counsel opined it would be preferable that he relay the son's preferences, if any, to the court, as allowed by section 3150, subdivision (a), claiming it was not advisable for the son to testify pursuant to relevant provisions of the Evidence Code.[6] The trial court declined Father's request to call the son as a witness, finding that it would not be in the son's best interest to do so and would be "traumatic" for him. The

---

[5] A child 14 years of age or older who wants to address the court "shall be permitted to do so" unless the court determines it would not be in the child's best interest. (§ 3042, subd. (c).) The court may allow a younger child to address the court, "if the court determines that is appropriate pursuant to the child's best interest." (*Id*. at subd. (d).)

[6] Section 3150, subdivision (a) authorizes the trial court to appoint private counsel to represent the interests of a child in a custody or visitation proceeding. "The child's counsel . . . is charged with the representation of the child's best interests. The role of the child's counsel is to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court in any manner appropriate for the counsel of a party. If the child so desires, the child's counsel shall present the child's wishes to the court. The counsel's duties, unless under the circumstances it is inappropriate to exercise the duty, include interviewing the child, . . . and making any further investigations as the counsel considers necessary to ascertain evidence relevant to the custody or visitation hearings." (§ 3151, subd. (a).)

court indicated "[the son's] voice will be well-presented to the court, as well as [the daughter's], by minor's counsel. . . ."

Father also asked the court to allow his sister, Evelyn Van (aka Evelyn Malmhall), to testify at trial, and to "stand in move-away trial as a representative witness for [their] relatives in San Jose, CA." Father alleged that Mother's failure to comply with visitation orders deprived his family of visits with the children. The court granted the request for the sister to testify, but denied the request that she serve as a "representative witness" pending trial.

In August 2020, Father asked the court to make orders regarding the children's 2020 winter break visitation. The court, in October 2020, denied the request to fly the children to California for visitation due to the son's asthma and the potential for Covid-19 exposure. Rather, the court authorized Father to visit the children in New Jersey for two weeks, and ordered the parties to share the costs, not to exceed $3,000 total. Finding that there had been a change in circumstances based on Mother's lack of earnings, it declined to require Mother to pay the full amount of Father's travel costs.

Prior to the start of the custody trial, Father indicated that he intended to seek physical custody only of the parties' son, rather than asking that both children return to California.[7] Mother requested that both children remain with her in New Jersey, with Father having visits twice a year. She argued that the children were doing well, living in Mother's home with her husband, their grandmother, and their younger brother. Mother expressed great concern that Father wanted to move their son back to California, depriving the children of their sibling relationship. Minor's counsel recommended that the court maintain the custody orders recommended by the custody evaluator in March

---

[7] In a declaration filed in November 2020, Father requested that the parties share "50/50 joint physical custody of the children," but clarified that he meant Father would have "full physical custody" of the parties' son, Mother would have "full physical custody" of the parties' daughter, and the parties would share joint legal custody.

5

2017, giving Mother physical custody of both children, with certain modifications to the visitation provisions.

The court commenced the custody trial in December 2020. The minute orders in the record indicate that the court heard testimony from Father, Mother, and Father's sister over the course of five days of the trial, and admitted various exhibits into evidence.[8]

Father was the sole witness during the one day of testimony reflected in the record. His testimony started during a previous hearing; the available transcript reflects Mother's and minor's counsel's cross-examination of Father. During cross-examination, they addressed Father's employment status and income, whether he had any firearms in his home, his daily contact with the parties' son over video chat, whether Father recognized a difference in the children's attention spans during video chats based on their age difference (at the time of trial, the son was 12 years old and the daughter 8), and Father's opinion that Mother does not properly perform her duty to care for the children.

At the close of evidence, the court allowed the parties to submit a one-page declaration identifying any additional information they wanted the court to address prior to closing arguments. Father provided a seven-page brief, to which he attached seven additional exhibits. Father also filed an Income and Expense Declaration, at the trial court's request.

In closing argument, Mother's attorney suggested that Father had the burden to show that Mother moved to New Jersey in bad faith, or that the children would otherwise suffer detriment as a result of the move. The court corrected counsel, noting that this court reversed the prior order for applying the standard Mother's counsel suggested. The court indicated it would consider the matter de novo, applying the best interest of the child standard.

---

[8] Father only designated the record from one day of testimony in this appeal; the other two reporter's transcripts he designated from the trial reflect the parties' closing arguments and the court's ruling.

6

Minor's counsel recommended, as he did before trial, that the trial court adopt the March 2017 order with amendments, such that Mother would have sole physical custody of both children in New Jersey, with Father having joint legal custody and visitation in either California or New Jersey. Recognizing his duty under section 3151, subdivision (a),[9] to present the child's opinion when the child wants it expressed to the court, minor's counsel indicated, "I can make no expression of the children's desires pursuant to that [statute]." Mother asked the court to adopt minor's counsel's recommended orders.

Father called the court's attention to the exhibits he presented during trial, which he argued demonstrated that Mother did not cooperate with his and his family's visitation, noting in particular that Mother "denied him" over two months' time of visitation during the pandemic. He claimed that Mother committed perjury during her testimony concerning her care of the children and her mother's availability to accompany the children on visits. Father opined that Mother was not able to meet their son's educational needs, and believed he was better suited to help the child with school, including providing assistance with his physical fitness. Regarding maintenance of the son's relationship with the parties' daughter under Father's proposal to have physical custody solely with the son, Father indicated he would allow the children to talk every day, and could assist his daughter with her schoolwork during those calls.

Following argument, the trial court issued its ruling on the record. It indicated that, because the previous orders were temporary and Mother did not have a presumptive right to move with the children, it was "considering de novo what physical arrangement would be in the children's best interest in light of the proposed move." It was not requiring Father to demonstrate that the children would suffer detriment if the children

---

[9] Although minor's counsel referred to section "3015," in context it is clear that was a misstatement. In rebuttal argument, counsel cited the correct statute, section 3151, subdivision (a).

7

remained with Mother. While Father declined to participate in an updated custody evaluation, the trial court found that the lack of such an update did not prejudice either party, "because this trial was very thorough and the parties presented extensive evidence. . . . So I don't think that there would have been additional information that would have been gathered by a custody evaluator that the Court didn't get to hear about."

Citing *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*), the court addressed the factors it considered to determine the best interest of the children, including the reasons Mother moved to New Jersey, the children's interest in the stability and continuity of a custodial arrangement, the distance between Mother's and Father's homes, the children's age and relationship with each other and with each parent, the parents' relationship with each other and the likelihood that either would facilitate visitation, the wishes of the children, and the difficulties Father encountered regarding in person visitation during the Covid-19 pandemic. The court found it significant that Father wanted to split up the children without fully considering the effect that separation would have on them. It also found significant that Father had asked the court to prohibit contact between Mother and the children during their visits with Father in California as a punishment for Mother allegedly limiting Father's access to the children. Contrary to Father's assertions, the trial court found that Mother would facilitate the children's visitation with Father, noting that Mother continued to allow lengthy, nightly video calls even after the court put a limit on the calls. The court found that Father's inability to have in-person visits with the children in the preceding "couple of years" was due to the Covid-19 pandemic, and not a result of Mother withholding the children or attempting to interfere with Father's visits.

Based on these factors, the trial court found it was in the children's best interest to remain in New Jersey with Mother. It awarded Mother sole physical custody of the children, with the parents sharing joint legal custody. The court authorized Father to visit the children in New Jersey one weekend per month, and for a week during spring break.

The children would also visit Father in California for a week during winter break, and four weeks during summer vacation. The court allowed Father to have three 20-minute video calls with the children each week. It ordered that Mother could not extend these visits, finding that extended video chats were not in the children's best interest. If the children's grades dropped because they were not working on schoolwork with Father, the court indicated it would reconsider allowing Father more time, or order Mother to hire a tutor for the children.

The court ordered Father to pay all of the expenses connected with travel for his visits with the children, subject to later reallocation. The court found that Father's claims regarding his monthly income and his alleged inability to work or find a job making higher income were not credible. The court reviewed the income and expense declarations Father filed from 2018 through 2021, and noted that his income and cash assets as listed on those forms never changed over the years, despite Father's testimony that the Covid-19 pandemic affected his income. During his trial testimony on the issue, the court noted that Father indicated he could support the parties' son to live with him and pay for the daughter to come visit him because of an "apparently limitless amount of money he could get from his sister," and while the court questioned the credibility of that testimony, it noted an inconsistency with any claim that Father could not pay the costs of visitation as ordered by the court. The court also pointed out that Father testified that he worked 40 hours per week, until the court questioned why his income did not calculate to minimum wage working full time, and that Father was "nervous and evasive" when testifying about his income, "unlike [during] other aspects of [his] testimony. . . ."

The court noted that the prior order requiring Mother to pay for the children's visits caused conflict, and it was concerned that requiring the parties to split the costs would create more conflict, given that the court wanted to allow Father frequent visits with the children. Thus, "in the best interest of the children, to minimize conflict between the parties," the court ordered Father to pay all of the costs.

9

Father filed his appeal from the trial court's November 2021 minute order.[10] The trial court thereafter issued a written order in January 2022 comporting with the orders made on the record. The written order confirms that it is a final, long-term custody order, such that it is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(13).[11]

## II. DISCUSSION

### A. General Legal Principles and Standard of Review

Under section 3040, subdivision (c), the trial court has "the widest discretion to choose a parenting plan that is in the best interest of the child[ren]," when making initial long-term custody orders. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31 (*Burgess*) [discussing former section 3040, subd. (b), renumbered to section 3040, subd. (c) in Stats. 2012, ch. 845, § 1].) To determine the children's best interest, the court must consider several factors, including "[t]he health, safety, and welfare of the child," a history of abuse by one parent against a related child or the other parent, and "[t]he nature and amount of contact with both parents," as well as "any other factors it finds relevant . . . ." (§ 3011, subds. (a), (b)(1), & (c); *Burgess*, at p. 32.)

If the trial court decides to award sole custody to one parent, rather than to both parents jointly,[12] the court must also consider "which parent is more likely to allow the

---

[10] Father represents himself in this appeal, as he did in the trial court. Neither Mother nor minor's counsel filed a responsive brief, despite having received proper notice of the proceedings.

[11] The trial court's minute order does not direct the preparation of a written order. However, during the oral proceedings, it was clear that the court expected minor's counsel to prepare such an order. Thus, we deem the notice of appeal filed as of January 18, 2022, the date the trial court issued its written order. (Cal. Rules of Court, rule 8.104(d).) We will refer to the order on appeal as the January 2022 order.

[12] " 'Sole physical custody' means that a child shall reside with and be under the supervision of one parent, subject to the power of the court to order visitation." (§ 3007.) "Joint physical custody" affords each parent "significant periods of physical custody," shared in "such a way so as to assure a child of frequent and continuing contact with both parents . . . ." (§ 3004.)

frequent and continuing contact with the noncustodial parent." (§ 3040, subd. (a)(1).) The task for the trial court becomes more difficult when one parent seeks to relocate the children to a distant location. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 362.) "A custody decision allowing one parent to move the children out of the state necessarily interferes with the other parent's ability to have frequent and continuing contact with them" and " 'is one of the most serious decisions a family law court is required to make.' " (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1119.)

As we determined in *Nguyen & Van*, when the trial court issued the March 2017 order, there was not a permanent custody order in place; we remanded the matter for the trial court to issue such an order. (*Nguyen & Van*, *supra*, at pp. 17-18, 20.) Where there is no final judicial custody determination, a parent with temporary sole physical custody of the children does not have a presumptive right to move under section 7501.[13] Nor does the changed circumstance rule apply; neither parent must show that the proposed move would be detrimental to the children. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 19-20 (*F.T.*); *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1054.) Instead, the court must evaluate de novo what physical custody arrangement would be in the children's best interest, in light of the proposed move. (*F.T.*, at p. 22; *Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124.)

In doing so, the trial court may consider the factors enumerated by the Supreme Court in *LaMusga*:[14] "the children's interest in stability and continuity in the custodial

---

[13] Where the order is a final, permanent order, a parent with sole physical custody has a presumptive right to move with the children, "subject to the power of the court to restrain a removal that would prejudice the rights or welfare of the child[ren]"; the custodial parent does not have to show that the move is "necessary." (§ 7501, subd. (a); *LaMusga*, *supra*, 32 Cal.4th at p. 1078; *Burgess*, *supra*, 13 Cal.4th at pp. 37-38.)

[14] While the *LaMusga* court set forth these factors when considering relocation of the children as a *modification* of a final custody order, they are relevant to the trial court's general exercise of discretion to establish a final order under section 3040, subdivision (c), and the trial court's authority to consider "any other factors it finds relevant" under section 3011.

arrangement; the distance of the move; the age of the children; the children's relationship with both parents; the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; the wishes of the children if they are mature enough for such an inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently are sharing custody." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)

We review custody and visitation orders under the abuse of discretion test, measuring "whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child[ren].  We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked. [Citation.]" (*Burgess*, *supra*, 13 Cal.4th at p. 32.)  While the standard of review we apply is deferential, we give thoughtful consideration to the reasons for the court's order.  "[A] trial court abuses its discretion if there is no reasonable basis on which the court could conclude its decision advanced the best interests of the child[ren].  [Citation.]" (*F.T.*, *supra*, 194 Cal.App.4th at p. 15, citing *Burgess*, *supra*, 13 Cal.4th at p. 32.)  A court also abuses its discretion if it applies improper legal criteria or incorrect legal assumptions. (*F.T.*, at pp. 15-16.)  "The appellant bears the burden of showing a trial court abused its discretion. [Citation.]" (*Id*. at p. 16.)

### B. *Father Has Not Demonstrated an Abuse of Discretion*

Based on a careful consideration of the record before us, Father has failed to meet his burden to demonstrate an abuse of the trial court's discretion.  Based on the several days of testimony considered by the court from both parties and Father's sister, it was not unreasonable for the trial court to conclude that it was in the best interest of the minor children that Mother have sole physical custody of the children in New Jersey, where they had lived for over four years with her at the time the court made the January 2022 order.  "As [the Supreme Court has] repeatedly emphasized, the paramount need for

12

continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements. [Citations.]" (*Burgess*, *supra*, 13 Cal.4th at pp. 32-33.)

Father contends that the trial court's order does not support his frequent contact with the children, and that the court failed to properly assess Mother's alleged failure to act in the children's best interest, or otherwise consider the children's best interest in making its custody order. Implicit in this contention is an argument that the trial court failed to consider the "health, safety, and welfare of the [children]" or "[t]he nature and amount of contact with both parents," as required by section 3011, or that there is not substantial evidence to support the trial court's findings, including its implied finding that Mother is the parent "more likely to allow the frequent and continuing contact with the noncustodial parent," under section 3040, subdivision (a)(1).

In claiming that the trial court abused its discretion, Father alleges that the trial court overlooked evidence demonstrating that Mother and her family denied Father's contact with the children in the past and violated previous visitation orders issued by the court. He claims that the evidence demonstrated that Mother properly failed to care for the children, and that the court failed to consider the children's needs in awarding Mother custody. He further argues that the court ignored written objections he filed in 2016 and 2017, including objections to the process followed by Family Court Services in issuing the custody evaluation report. Father also believes the court ignored his numerous past requests for custody of the children, and that the court discriminated against him based on gender when it made determinations about how the children had or had not bonded with him as a parent.

In reviewing for substantial evidence, we view the evidence in the light most favorable to and resolving all conflicts in favor of the trial court's order. (*In re Marriage*

13

*of Brooks* (2019) 33 Cal.App.5th 576, 589.)[15] Even if we assume that substantial evidence supports Father's position, we must affirm if the record also demonstrates substantial evidence in support of the order. (*Ibid.*) Here our review of the evidence is hampered by the incomplete record before us. In its oral ruling on the record, the trial court carefully described the information it considered in determining the appropriate custody arrangement for the children. It referenced the extensive evidence presented by the parties at the trial, including the evidence Father submitted regarding the period after the March 2017 order. But the record on appeal is devoid of much of this evidence because Father did not include the relevant trial transcripts in his record designation. (See fn. 1, *ante*.)

In the absence of a record of the evidence adduced at the custody trial, this court must presume that the trial court's order is correct. Father has the burden to demonstrate error based on the record presented to this court. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).) " 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." [Citation.] . . . '. . . Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' [Citation.]" (*Ibid.*) As Father has not provided a record of the testimony heard by the trial court, we

---

[15] Father's arguments rest in part on contentions that the trial court erred in issuing the March 2017 order. As previously noted, this court reversed that order, concluding that the trial court erred by applying an incorrect legal standard. But it is clear from the record here that the trial court understood that it was required to conduct a de novo custody trial on remand after our opinion in *Nguyen & Van*, and that it complied with our directions.

must presume that it included evidence supporting the January 2022 custody order, despite the contrary documentary evidence Father cites on appeal.[16]

However, we note that the trial court's detailed discussion of its order indicates that it had ample evidence supporting its decision to maintain the children with Mother in New Jersey. The court referenced evidence that Mother chose to move to New Jersey because she remarried and the cost of living in Silicon Valley was not affordable, and not from bad faith. The court considered the children's stability with Mother in their home in New Jersey, including evidence that they had attended the same schools and lived in the same neighborhood for close to five years and were closely bonded with their maternal grandmother. The court discussed Mother's ability to properly care for the children, that the children had been together daily since relocating to New Jersey, and had a strong relationship with their baby brother. The court considered evidence that Father wanted to separate the children by bringing only the son to California, to the emotional detriment of daughter. The court discussed the parents' relationship with one another, specifically regarding which parent was more likely to facilitate contact with the noncustodial parent. The court noted that the parties had long been involved in litigation, but observed that Father requested an order that Mother have no contact with the children when they visited California specifically to punish her, without consideration of how this would affect the children. In contrast, Mother facilitated video and phone visits with Father during the pandemic that exceeded the time allotted by the existing visitation order, and expressed willingness to facilitate visitation with Father. She also went into debt to pay for visits he made to New Jersey to see the children.

---

[16] We are mindful that Father is representing himself, and we have exercised our discretion to liberally construe his pleadings in recognition of the difficulties encountered by self-represented litigants. However, he is bound by the same laws and rules as other litigants and attorneys, and we cannot overlook any failures to comply with those requirements in designating the record or briefing the issues on appeal. (See *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520; *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31.)

15

The court further indicated that it had considered the custody evaluation report prepared in advance of the March 2017 order, which recommended that Mother be allowed to relocate with the children, and had obtained significant evidence regarding the children's circumstances since that report. Regarding Father's inability to see the children in person in the almost two years preceding the January 2022 order, the trial court determined that the Covid-19 pandemic was the primary cause of visitation disruption, not any effort by Mother to keep the children from Father or interfere in his relationship with the children. The court noted that while the distance between New Jersey and California is significant, the children are old enough to fly between the states for visitation, and thus could visit Father in California on a schedule set by the court.

In short, having heard the evidence, the court determined it was in the best interest of the children to remain in New Jersey with Mother, and supported its conclusion with findings based on the evidence it had heard. These findings reflect a proper consideration of the factors the court was required to consider under sections 3011 and 3040, as well as the discretionary factors it could consider under *LaMusga*. Based on established principles of appellate review, we conclude the trial court did not abuse its discretion when it issued the custody order as there was a "reasonable basis on which the court could conclude its decision advanced the best interests of the child[ren]. [Citation.]" (*F.T.*, *supra*, 194 Cal.App.4th at p. 15, citing *Burgess*, *supra*, 13 Cal.4th at p. 32.)

### C. *Father has not demonstrated error in the trial court's evidentiary rulings.*

Father contends the trial court erred in denying his request to call the parties' son as a witness at trial. He also claims the court erred in sustaining a hearsay objection at the trial when he attempted to testify regarding the son's alleged desire to come back to California. Father has failed to demonstrate an error in the trial court's orders.

Section 3042, subdivision (a) requires the trial court to consider "and give due weight to" a child's wishes, "[i]f a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation . . . ." As the parties' son was

16

under 14, the court was not required to allow him to address the court regarding custody issues. (§ 3042, subd. (c).) "If the court precludes the calling of a child as a witness, the court shall provide alternative means of obtaining input from the child and other information regarding the child's preferences." (*Id.* at subd. (e).) Here, the court provided an alternative means of obtaining the son's input, as it appointed minor's counsel and afforded the appointed attorney the opportunity to present the son's wishes to the court, if the son so desired. (See §§ 3042, subd. (g) [minor's counsel shall notify the court if a child wishes to address the court, and the court may make an inquiry in the absence of a specific request], 3150, subd. (a).) Minor's counsel indicated at trial that he did not have anything to present to the court, citing section 3151, subdivision (a). Moreover, the trial court found that both children were too young to express an opinion on their preferences. We presume that the evidence the court heard at trial supports that finding. (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

The trial court also expressed concern that Father had obtained information about the son's alleged preferences in violation of prior orders precluding the parties from involving the children in the litigation or interrogating the children. In addition to hearsay evidence concerns under Evidence Code section 1200, in a vigorously contested custody matter, a trial court may reasonably question the reliability of a parent's representation regarding a child's preference of custodial parent. Thus, we cannot say that the trial court abused its discretion in sustaining an objection when Father attempted to testify regarding the son's alleged preferences. (See *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 837 ["A trial court's decision about the admissibility of evidence is ordinarily reviewed under the abuse of discretion standard."].)

Father's claim that the court erred in denying his request that his sister appear as a witness is misplaced. The court clearly granted Father's request; the record before this court indicates his sister did testify. Father's argument stems from his request to recall his sister later in the trial. The court did not deny that request. It indicated Father could

17

make an offer of proof regarding additional testimony he wanted to elicit from his sister. There is nothing in the record before this court indicating he made such an offer of proof, or that the court rejected such an offer.

Similarly, Father's contention that the court erred in sustaining an objection to Father's Exhibit G is without merit. While the court did not admit the exhibit into evidence when it was first presented, it later admitted the exhibit.

### D. Father has not demonstrated error in the court's order regarding visitation expenses.

Father contends that the trial court did not "properly consider" his inability to relocate to New Jersey and the financial difficulty Father would face under the order allowing him to visit the children in New Jersey. He further argues that the trial court discriminated against him based on his financial situation, and improperly issued a child support order by requiring Father to pay all of the costs of visitation.

The record available to this court indicates that the trial court did consider Father's ability to pay visitation expenses. It made an explicit finding that Father's claims concerning his income were not credible, after reviewing many years' worth of income and expense declarations Father filed with the court. Father does not dispute that these declarations demonstrate that he had a consistent stream of income and cash assets available to him—a basis for the trial court's credibility determination. Essentially, Father wants this court to reweigh the evidence and make a different credibility finding, which we cannot do. "The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed. This is the nature of fact finding. 'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' [Citation.]" (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099 (*Greenberg*).) "We do not judge credibility on appeal. An adverse factual finding is a poor platform upon which to predicate reversible error." (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175, citing *Greenberg*, at p. 1097.)

18

Father's claim that the trial court improperly made a child support award during these custody proceedings by ordering that he pay his costs to visit the children subject to reallocation is not supported by the law. The trial court has discretion to include visitation travel expenses as a child support add-on under section 4062, subdivision (b)(2). However, the availability of such an order does not preclude the trial court from allocating the costs of visitation independent from a support order. (See *Burgess*, *supra*, 13 Cal.4th at p. 40; *Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 391 disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512.) The trial court has "broad discretion to modify orders concerning contact and visitation to minimize the minor children's loss of contact and visitation with the noncustodial parent in the event of a move. . . ." (*Burgess*, at p. 40.) While this discretion is often exercised to require the custodial parent to share in the noncustodial parent's expenses, Father does not cite and we are not aware of any legal authority preventing the trial court from exercising its discretion to require the noncustodial parent to pay all travel expenses in appropriate circumstances.

Here, the trial court expressly found it was in the children's best interest for Father to pay these expenses, subject to later reallocation, because the costs had been a subject of dispute in the past, and the court found Mother did not have the ability to pay the costs, while Father did. We cannot reweigh the evidence to reverse the court's credibility finding, particularly given the incomplete record presented by Father on appeal. Nor do we determine that the trial court otherwise abused its discretion based on the record before us.

### E. Father has not demonstrated a procedural error by the court.

Father argues that the trial court erred when it interrupted Mother's closing argument to inform the attorney that she was arguing the incorrect legal standard. He further claims the court erred in allowing Mother and minor's counsel more than the designated 15 minutes for their closing arguments. Because minor's counsel exceeded

the 15-minute time limit set by the court for his argument by "a few minutes," the court indicated it would afford Mother and Father an "extra few minutes" for their argument as well. We discern no error in the court's conduct of the proceedings.

### III. DISPOSITION

The January 18, 2022 order after trial is affirmed.

_____

Greenwood, P. J.

WE CONCUR:

_____

Grover, J.

_____

Danner, J.

H049612 Nguyen v. Van