Filed 12/4/24  Dept. of Transportation v. Wynnycky CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| DEPARTMENT OF TRANSPORTATION et al., | C095834 |
| Plaintiffs and Respondents, | (Super. Ct. No. TCU217868) |
| v. | |
| MARCUS WYNNYCKY, | |
| Defendant and Appellant. | |

Marcus Wynnycky appeals in propria persona from the imposition of a five-year workplace violence restraining order pursuant to Code of Civil Procedure section 527.8.[1] He raises numerous contentions, including: (1) that he was not properly served with the petition, temporary restraining order, and notice of hearing on the petition for the restraining order; (2) that the term of the restraining order exceeds the statutory

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

maximum; (3) that the trial court granted an excessive number of continuances such that the proceedings exceeded the time allowed by statute; (4) that substantial evidence does not support the trial court's finding that he engaged in a course of conduct warranting imposition of the restraining order; and (5) that the restraining order infringes on his right to free speech. We agree with the first of these contentions. Accordingly, we will reverse the order.[2]

## I.  BACKGROUND

Wynnycky was hired as a probationary seasonal maintenance worker by the Department of Transportation (Caltrans). He was rejected after the probationary period due, in part, to inappropriate behavior towards other Caltrans employees. That behavior included making racially charged remarks, steering conversations towards disturbing subjects (such as chopping up bodies), and using menacing body language (such as acting as though he was concealing a gun in his jacket). The rejection was communicated to Wynnycky, and he was escorted from the Caltrans maintenance station.

A post appeared on a peer-to-peer content sharing site soon thereafter. The post identified another Caltrans employee by name and described him as armed and violent, with a gang history. The post listed the employee's home address and provided detailed instructions on where to find him at the maintenance station.

Caltrans filed a petition for a workplace violence restraining order on May 18, 2021. (§ 527.8.) The petition was granted, and a temporary restraining order was entered until the required hearing, initially set for June 9, 2021. There followed a months-long effort to serve Wynnycky with the temporary restraining order and notice of hearing. The hearing was continued several times to allow for service.

---

[2]  We do not reach Wynnycky's other contentions.

In the meantime, another post appeared on the previously described website. The post identified additional Caltrans employees by name and date of birth, described them using racially derogatory and/or anti-Semitic language, and falsely accused them of criminal misconduct and other misdeeds. The post also identified the attorney who filed the initial petition for a workplace restraining order by name and date of birth. The post also provided home addresses for the newly identified employees and attorney.

Caltrans filed an amended petition for a workplace violence restraining order on behalf of the additional employees and attorney on August 9, 2021. As before, Caltrans struggled to effectuate service of process. One of the addresses provided by Wynnycky during the hiring process turned out to be a flea market; another, a United States Post Office. Caltrans investigators tried and failed to locate Wynnycky. A private investigator was retained. He was no more successful than his predecessors. The hearing on the restraining order was continued once more.

Caltrans appeared for a status conference on September 21, 2021. Caltrans' attorney described the ongoing effort to serve Wynnycky and asked that the trial court allow an alternative means of service. The trial court ordered that service be made by mail, email, and publication in a newspaper of general circulation in Studio City, California, where Wynnycky was believed to reside. The trial court added: "And what we'll do is as far as publication goes, why don't we do three attempts, just like any normal civil case, once a week for three weeks, and I'll continue this out to give you enough time to complete service by publication." The hearing on the restraining order was continued twice more to permit service by publication.

Caltrans published notice of the hearing on the restraining order in the Los Angeles Daily Journal over three successive weeks, beginning on November 5, 2021. Caltrans also served the temporary restraining order and notice of hearing on Wynnycky by email and regular mail.

3

The hearing on the restraining order was finally held on December 8, 2021. Caltrans' attorney reported that Wynnycky—who did not appear—had been served by mail, email, and publication. Following a brief discussion, the trial court found Wynnycky had been sufficiently served with notice of the hearing, and Caltrans showed by clear and convincing evidence that unlawful harassment occurred and credible threats of violence were made. The trial court then entered a five-year restraining order protecting nine Caltrans employees, three members of their immediate families, and two attorneys.

The record does not show Wynnycky was ever personally served with the temporary restraining order, notice of hearing, or final order. Nevertheless, Wynnycky filed a timely notice of appeal.[3]

## II. DISCUSSION

We begin with a word on the briefing. Caltrans accurately observes that Wynnycky's opening brief contains numerous violations of the California Rules of Court, including failure to state each point under a separate heading or subheading, failure to support each point with argument and authority, and failure to support references to matters in the record with citations to the volume and page number of the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(B)-(C); see also *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 ["Appropriate headings require litigants to ' "present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass" ' "].) Caltrans also observes that the opening brief generally lacks clarity

---

[3] Wynnycky also filed a motion for sanctions. That motion is denied.

4

and organization, and frequently devolves into inflammatory and unintelligible rambling. These are not trivial concerns.

"The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*Id.* at pp. 286-287.) " 'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457.) " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204.)

Caltrans encourages us to treat all of Wynnycky's arguments as forfeited for failure to comply with these well-settled rules of appellate practice. (See, e.g., *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 ["If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived"]; *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619 [appellant "forfeited his contentions by failing to comply with the applicable rules of appellate procedure"].) These rules apply to attorneys and self-represented litigants alike. (*Flores v. Department of Corrections & Rehabilitation, supra*, 224 Cal.App.4th at p. 205 ["The same rules apply to a party appearing in propria persona as to any other party"]; *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520 [a party

appearing in propria persona " 'is entitled to the same, but no greater, consideration than other litigants and attorneys' "].) Thus, we could consider the entire appeal forfeited. We decline to do so, however. Although Wynnycky's briefs are hardly models of appellate advocacy, they are not so inadequate that we cannot review his primary arguments. Accordingly, we will exercise our discretion to consider his contention that he was not properly served.

*A.*      *Applicable Legal Principles and Standard of Review*

     " 'Section 527.8, the Workplace Violence Safety Act, enables an employer to seek an injunction to prevent violence or threatened violence against its employees. The statute provides, . . . "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace, and, if appropriate, other employees at other workplaces of the employer." (§ 527.8, subd. (a).' " (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 945 (*Severson & Werson*).)

     "Upon the filing of a petition, the court may issue a temporary restraining order and set a hearing within 21 days, or if good cause appears to the court, 25 days. (§ 527.8, subds. (e) & (g).) The respondent must be personally served at least five days before the hearing with a copy of the petition, any temporary restraining order that may have been issued, and notice of the hearing. (*Id.*, subd. (m).)" (*Goals for Autism v. Rosas* (2021) 65 Cal.App.5th 1041, 1045.)

     The trial court must then hold a hearing to "receive any testimony that is relevant" and "make an independent inquiry." (§ 527.8, subd. (j).) "If the judge finds by clear and convincing evidence that the respondent engaged in unlawful violence or made a credible threat of violence, an order shall issue prohibiting further unlawful violence or threats of

6

violence." (*Ibid*.)  The order may last no more than three years and may be renewed upon request for an additional three years.  (§ 527.8, subd. (k)(1).)

We ordinarily review a restraining order issued under section 527.8 for substantial evidence, resolving all factual conflicts in favor of the prevailing party, and drawing all reasonable inferences in support of the trial court's findings.  (*Severson & Werson, supra*, 37 Cal.App.5th at p. 944; see also *Technology Credit Union v. Rafat* (2022) 82 Cal.App.5th 314, 323.)  "However, '[t]he question whether the order was authorized under the statute, as a matter of statutory interpretation, is reviewed de novo.  [Citation.] We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Severson & Werson, supra*, at p. 944.)

B.     *Service of Process*

Wynnycky argues Caltrans' attempt to serve him by publication was defective.  He notes Caltrans published notice of the hearing on the restraining order for three successive weeks, but service by publication requires four weeks.  (*Watts v. Crawford* (1995) 10 Cal.4th 743, 747, fn. 4 ["Service by publication requires four weeks of weekly publication.  It is not complete until the conclusion of the fourth week following the first day of publication"]; see also § 415.50, subd. (c), Gov. Code, § 6064.)  Wynnycky is not wrong, but we perceive a more fundamental problem with service of process here.

Section 527.8, subdivision (m) provides in pertinent part:  "Upon filing of a petition under this section, the respondent shall be *personally served* with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition." (Emphasis added.)  The statute thus requires personal service of the notice of the petition, temporary restraining order, and notice of petition.  (*Ibid*.)  It is undisputed that no such service took place here.

The Legislature knows how to provide for alternative methods for service of process when it chooses to do so.  (See, e.g., § 527.6, subd. (m).)  For whatever reason,

7

the Legislature has chosen to require personal service for workplace violence restraining orders obtained by an employer pursuant to section 527.8. (§ 527.8, subd. (m).) We must respect that choice.

We are guided here by *Searles v. Archangel* (2021) 60 Cal.App.5th 43 (*Searles*). There, the petitioner, Searles, applied for a civil harassment restraining order against the respondent, Archangel, pursuant to a former version of section 527.6. (*Searles, supra*, at p. 45.) The trial court dismissed Searles's petition after she tried and failed to personally serve Archangel with the petition and notice of hearing. (*Ibid.*) Searles appealed, arguing the trial court should have granted her motion to waive traditional service and allow service through social media. (*Id.* at pp. 45, 47.) The Court of Appeal acknowledged evidence that Archangel was homeless and evading service of process but still managed to follow Searles on social media. (*Id.* at pp. 46-47.) The court also acknowledged that there might be sound policy reasons for allowing service through social media. (*Id.* at p. 51.) All the same, the court concluded section 527.6, former subdivision (m) "requires personal service of the petition, TRO and notice of hearing in civil harassment restraining order cases and does not permit the court to approve alternative methods of service." (*Searles, supra*, at p. 51; see Stats. 2021, ch. 294, § 1.) The same conclusion is reached here.

Section 527.8, subdivision (m) is virtually identical to section 527.6, former subdivision (m). (Compare § 527.8, subd. (m) ["Upon filing of a petition under this section, the respondent shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition"] and § 527.6, former subd. (m), Stats. 2021, ch. 294, § 1 [same]; see also *CSV Hospitality Management, LLC v. Lucas* (2022) 84 Cal.App.5th 117, 122 [" '[I]njunctive proceedings under section 527.8 are intended to parallel those under section 527.6, which are procedurally truncated, expedited, and intended to provide quick relief to victims of civil harassment' "].) By their terms, both require personal service of the petition, temporary restraining order, and

notice of hearing. Following the analysis set forth in *Searles,* we conclude section 527.8, subdivision (m) does not allow service by publication either.

Recent developments support this conclusion. After the Court of Appeal's decision in *Searles*, the Legislature amended section 527.6 to provide for alternative methods of service when the petitioner has been unable to personally serve the respondent despite a diligent effort. (See Assem. Bill No. 1143 (2020-2021 Reg. Sess.), Stats. 2021, ch. 156, § 1 [adding subd. (m)(2) to § 527.6, effective Jan. 1, 2022].)[4] The Legislature amended section 527.8 shortly thereafter. (See Sen. Bill No. 428 (2023-2024 Reg. Sess.), Stats. 2023, ch. 286, § 1 [amending § 527.8 to require that employers seeking temporary restraining orders on behalf of their employees give employees the opportunity to decline to be named].) But the Legislature made no change to the personal service requirement in section 527.8, subdivision (m). We presume the Legislature was aware that section 527.6, former subdivision (m) had been construed in *Searles* to preclude alternative forms of service, and intentionally chose to leave the personal service requirement in section 527.8, subdivision (m) unchanged. (See *In re R.G.* (2019) 35 Cal.App.5th 141, 146 [courts presume the Legislature " 'was aware of existing related laws' "].) Again, we must respect the Legislature's choice. (See *Searles, supra,* 60 Cal.App.5th at p. 54.)

Because the statutory requirement of personal service was not met, we must reverse the permanent restraining order. (See *Severson & Werson, supra*, 37 Cal.App.5th at pp. 950-951 [failure to provide statutorily required notice of restraining order

_____

[4] Section 527.6, subdivision (m)(2) provides: "If the court determines at the hearing that, after a diligent effort, the petitioner has been unable to accomplish personal service, and that there is reason to believe that the respondent is evading service or cannot be located, then the court may specify another method of service that is reasonably calculated to give actual notice to the respondent and may prescribe the manner in which proof of service shall be made."

proceedings was structural error requiring reversal regardless of prejudice]; see also *American Express Centurion Bank v. Zara* (2011) 199 Cal.App.4th 383, 387 [" '[C]ompliance with the statutory procedures for service of process is essential to establish personal jurisdiction.  [Citation.]  Thus, a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void' "].)  In light of this conclusion, we deem it unnecessary to reach Wynnycky's other arguments.[5]

---

[5] We note, however, that, absent compliance with requirements governing renewal, the term of a workplace violence restraining order may not exceed three years.  (See § 527.8, subd. (k)(1) ["an order issued after notice and hearing under this section may have a duration of not more than three years," subject to renewal].)  Thus, the argument that the workplace violence restraining order's five-year term exceeded the statutory maximum is also well taken, as Caltrans appropriately concedes.

### III. DISPOSITION

The permanent restraining order is reversed. The temporary restraining order is reinstated upon the issuance of the remittitur and will remain in effect for 21 days to permit further proceedings on Caltrans' petition for a permanent restraining order, to the extent Caltrans wishes to pursue it.  Appellant Marcus Wynnycky is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

DUARTE, Acting P. J.


/S/

_____

MESIWALA, J.

11